No. 90-416

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THE MONTANA DEPARTMENT
OF REVENUE,

    Petitioner,

    v.

PATRICIA C. BARRON, and
the STATE TAX APPEAL BOARD,

    Respondents.



ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Petitioner:

        David W. Woodgerd, Chief Legal Counsel, Geralyn
        Driscoll, Tax Counsel, Department of Revenue,
        Helena, Montana

    For Respondents:

        J. Vaughn Barron, Great Falls, Montana; State
        Tax Appeal Board, Helena, Montana; Charles A.
        Smith, Attorney for STAB, Helena, Montana;

Filed:

Submitted: September 7, 1990
Decided:  October 12, 1990

_____
          Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

On September 11, 1990, this Court in this cause handed down a temporary order declaring that the application by the Department of Revenue of the stratified sales assessment ratio study in Area 2.1 (Great Falls Downtown) to the valuation of Patricia C. Barron's property was invalid for reasons to be later explained; we ordered that for all other properties in the state to which the Department's stratified sales assessment ratio studies for tax year 1990 had been applied, except for those instances now pending on appeal or properly appealed by the property owners, the effective date and application of our temporary order was prospectively continued until December 31, 1990; and we reserved for future decision the proper valuation of the property of Patricia C. Barron.

The effect of the prospective stay in the Order of September 11, 1990, is that as to all property affected by the stratified sales assessment ratio studies except for those stated in the Order, the appraised values for property tax purposes for the tax year 1990 shall be those found and applied by the Montana Department of Revenue (DOR) under said studies.

Under our state constitutional duty to pronounce our decisions in writing (Art. VII, § 3, 1972 Mont. Const.), as an aid to the legislature in its future enactments and by way of explanation to affected Montana taxpayers, we come now to make permanent the provisions of our temporary order and to set out the facts and conclusions which form the basis for the temporary order.

2

This is an original proceeding in this Court brought by the DOR which petitioned for a writ of review, a writ of supervisory control, or other appropriate emergency writ for relief from an order of STAB dated August 3, 1990. In that order, STAB had concluded, upon the protest of Patricia C. Barron, that the DOR's implementation of §§ 15-7-111(4)(8), MCA, was unconstitutional. (STAB contended here that it did not find the implementation unconstitutional, but only that a court would find it unconstitutional.) DOR's petition pointed to imminent statutory deadlines in the property tax collection process which created an emergency situation and said that a prompt ruling from this Court was necessary to end the uncertainty. DOR contended that no other adequate remedy existed that was speedy enough and that irreparable harm to taxpayers and governmental entities would occur if the controversy was not reserved well in advance of the issuance of tax notices that had to be mailed by October 25, 1990.

On receipt of DOR's application, we ordered that we would treat the proceedings as one for declaratory relief under Ch. 8, Title 27, MCA, obtain a response from the respondents, and set an oral argument date. Responses were filed and served, oral argument was had, and thereafter, on consideration, we issued a temporary order to which we have above adverted.

OVERVIEW

The Montana Constitution provides that the state shall appraise, assess, and equalize the valuation of all property which is to be taxed in a manner provided by law (Art. VIII, § 3). The

3

state must establish the assessed valuations (Art. VIII, § 4) and the legislature must provide independent appeal procedures for taxpayer grievances, appraisals, assessments, equalization and taxes, with a review procedure at the local government unit level (Art. VIII, § 7).

To implement the constitutional provisions, the legislature provided for property appraisals in Ch. 7, Title 15, MCA. In 1975, a scheme was adopted whereby the state would evaluate under a comprehensive reappraisal plan all taxable property in the state at least every five years. The DOR was required to adopt a plan so that all property in each county was revalued at least every five years or that no less than 20% of the property in each county was revalued each year. Section 15-7-111, MCA (1987).

The current five-year cycle for reappraisal began in 1986. The legislature extended that cycle period in 1989 for an additional two years, to end December 31, 1992, and postponed the commencement of another five year revaluation cycle until January 1, 1993. Section 15-7-133, MCA. The DOR was given an additional two years to complete the current revaluation cycle. Section 15-7-132, MCA.

In the last two legislative sessions, however, the legislature substantially amended the revaluation cycle. Ch. 613, Laws of Montana (1987); Ch. 636, Laws of Montana (1989). While keeping the five-year provision in effect, it provided in amended § 15-7-111, MCA, that for every taxable year beginning January 1, 1990, and each taxable year thereafter, the DOR is to conduct a

4

"stratified sales assessment ratio study" of all residential land and improvements (and other property not pertinent here). Under the amendment, the DOR was to partition the State into as many as 100 areas of residential property, and as many as 20 of commercial property. The areas in each are to be separately studied. Under the study, the <u>actual sales prices</u> of real property parcels sold for three taxable years prior to the study were compared with their <u>appraised values</u> then in effect, and a ratio determined. If the average appraised values of the properties in the study, compared to the average of the actual sales amounts were less than 95% or more than 105%, the assessments for each stratum within each area were to be rescaled to bring all ratios to common value 1.

The criteria for establishing the residential areas were that they should contain statistically sufficient numbers of sales and be as economically and demographically homogenous as practicable. Section 15-7-111(6), MCA. For tax year 1990, the DOR established 47 residential areas in the state, of which Area 2.1 (Great Falls Downtown) was one.

Criteria for obtaining statistically valid samples of sales in each area were also set out in the 1989 amendment. It is enough to say that only arm's-length sales were to be considered in the ratio study. The sales of remodeled residences were not to be considered and sales which showed assessment ratios of less than 50% or greater than 200% were to be excluded.

If the result of the study in each area produced sales assessment ratios of less than minus 5% of common value 1, or

5

greater than plus 5% of common value 1, then all of the assessments in the area were to be adjusted to bring the ratios to common value 1. Section 15-7-111(8)(a), MCA. If the ratio for any area was within plus or minus 5% of the common value 1, then the assessments in the area were considered equalized and no rescaling was necessary. Section 15-7-111(8)(c), MCA.

The legislature required the sales assessment ratio studies to commence for the taxable years beginning January 1, 1990, and for every taxable year thereafter and further provided that the ratio so determined "must be used to determine appraisals for the immediately succeeding tax year." Section 15-7-111(4), MCA.

FACTS

Patricia C. Barron is the owner of a residence in Great Falls, Cascade County, Montana. Her property is in an area designated by the DOR as Area 2.1. Prior to 1990, the Barron property was appraised by the DOR at a total value of $28,019 for land and improvements. The DOR conducted a "stratified sales assessment ratio study" in that area for taxable year 1990. It used a sample of 243 actual sales. It found therefrom an average sales price of $39,545 and an average appraised value of $29,310. The DOR determined that the weighed mean ratio of the figures was 0.7412, which required an adjustment factor of plus 30% The appraised value of Patricia C. Barron's residence was therefore fixed at a total of $40,325.

Barron appealed to the County Tax Appeal Board on these grounds:

Through H.B. 703, an arbitrary 30% increase was imposed on my house. Such an arbitrary increase does not address the mandate of Art. VIII, § 3 of the Constitution that the State equalize the valuation of all property and is therefore unconstitutional.

The appeal was denied by the County Tax Appeal Board for the reason that "The Board was informed that an error was found and that the necessary adjustment would be made by the DOR of Revenue."

Patricia C. Barron appealed to STAB, again on the same grounds.

STAB made findings of fact and conclusions of law on August 3, 1990, relating to the appeal. Pertinent to the findings are these:

The testimony indicated that approximately 1,000 of these sales were chosen for Cascade County and that 243 sales were analyzed and used to determine that the properties located in Area 2.1 were underappraised by 30 percent.

The pertinent conclusion of law with respect to this case made by STAB is found in paragraph 1. It includes:

It is the opinion of this Board that the taxpayer did not satisfactorily challenge the DOR's constitutional authority to appraise, assess, or equalize property values. The DOR clearly has that authority and is affirmed by the Montana Supreme Court in DOR of Revenue v. Countryside Village, 205 Mont. 51 (1983); Hanley v. DOR of Revenue, 207 Mont. 302 (1983). However, along with that authority goes the duty, and the requirement, to equalize property values throughout an area, county to county, and statewide. It is clear to this Board from the evidence and testimony provided that, for Area 2.1 at least, this has not been achieved. (Emphasis in original.)

STAB then went on to examine the results of the application of the 30% adjustment. Whereas before the adjustment, 40 of the 243 properties were overappraised and 203 were underappraised,

7

after the adjustment, 102 properties were overappraised in comparison with their sales price, and 141 underappraised. STAB pointed to the Barron property, saying that even after the 30% correction was applied, the appellant's property was still appraised at only 51% of its purchase price which was $75,000.

STAB then went on to analyze the results and eventually decided that Patricia C. Barron's property should be assessed at $75,000. It determined that DOR had failed to perform its constitutional mandate of equalization within Area 2.1 under the implementation of H.B. 703 and further concluded that based on the evidence presented, "the Board believes that the District Court would very likely rule that the implementation of H.B. 703 is unconstitutional, only for the reason stated above, that equalization within a specified area, has not been achieved." (H.B. 703 became Ch. 636, Laws of Montana (1989).)

Based on the determination made by STAB in Patricia C. Barron's case, the DOR commenced the original proceeding in this Court.

DISCUSSION

We have no issue of whether we should accept jurisdiction, since we have decided to treat the matter as an original proceeding for declaratory judgment.

The issue for us to decide is the constitutionality of the appraisal method as applied to this case.

The DOR supports the constitutionality of the amendments to § 15-7-111, MCA, which provides for the stratified sales assessment

ratio study. It contends that the purposes of the amendments were to adjust current appraised values rather than to reappraise property; to achieve equalization between areas in the state; to change appraisal values during the 5-year cycle; and pursuant to the amendments to § 15-7-111, to adopt administrative rules establishing the areas, and the methods of achieving the ratios, subject to administrative and judicial review. The DOR argues the taxpayer here is not in a position now to object to the adjustment to her appraisal.

The DOR further contends that STAB has no power to declare an administrative rule or a statute unconstitutional.

Patricia C. Barron contends that STAB was correct in determining that the implementation of H.B. 703 was unconstitutional as applied to her property but that STAB further erred in appraising her property at $75,000, as her right to constitutional equalization has thereby been violated. She argues that equalization is not achieved by the DOR's method of revaluation in breaking the county down into neighborhoods and applying different adjustments to different neighborhoods. She contends that the method of appraisal used in the five-year cycle is the only proper one to be used and that the method used by the DOR in fixing her 1990 appraised value does not achieve equalization.

STAB has responded that it did not declare that the method used by the DOR was unconstitutional, but merely said that it believed that a district court would find the implementation of

9

the appraisal unconstitutional. Since STAB's findings of fact were not disputed by the DOR, its findings must be considered agreed to and not subject to further argument. STAB contends that the net result to the DOR's adjustment to Area 2.1 is that there are now more properties overappraised and fewer underappraised than before the adjustment. This means that 100% of the 243 properties are still not appraised at market value after the application of the implementation.

STAB attacks the methodology used by the DOR in reaching the ratio. Cascade County has 40,699 improvements to real property; the DOR found 1,057 acceptable sales in the County or 2.6% of the total improvements in the County. There is no indication that this is a <u>representative sample</u> relating to age, condition, size, design, construction materials, location, utilities, city or county services, or other factors that determine value. STAB further contends that the appraisal values are not closer to market value as a result of the implementation and there is no evidence that the study brings the appraised property within the range of equality <u>and</u> market value.

As an additional issue, STAB points out that the amendment to § 15-7-102(6), MCA, now provides that a property owner may not appeal the yearly adjustments specified in § 15-7-111, MCA, that may be made as a result of the sales assessment ratio studies. Since there is no savings clause in Ch. 636, Laws of Montana (1989), H.B. 703, if the appeal provision is unconstitutional, STAB says that the whole of the legislation should fail.

Like the policeman in the Pirates Of Penzance, taking one consideration with another, the DOR's lot in property tax appraisal is not a happy one. Hampered by inadequate staff and funds, its task of individual appraisal of properties is almost impossible in any annual revision. The legislature itself is strapped in providing staff and additional funds. Yet, if our conclusions here are properly drawn and if we have a truly representative sample, property tax appraisals in Area 2.1 are seriously out of whack.

We are working, of course, with a fore-shortened record. We have before us 243 actual sales which fall within the parameters set up by the legislature. Other sales in that area are excluded. We are not told how many residential properties in total are to be found in Area 2.1. We assume, therefore, that because the legislature required it (§ 15-7-111(5)(b), MCA), and because it was not contested before STAB, that the 243 sales are a statistically valid sample, and that they truly represent the status of all tax appraisals in Area 2.1, before and after the application of the adjustment of 30% under the study conducted by the DOR.

One of the exhibits in the record before STAB was the DOR report containing the results of all stratified sales assessment ratio studies done in Area 2.1, required to be published by the DOR under § 15-7-111(7)(b), MCA. That report includes all of the 243 sales relied on by the DOR. Shown on the report are the appraised values as of 1989, the sales price for the individual properties and the ratio, for each sale, of the sales price over the 1989 appraised value. It was by averaging all of the appraised

values for the 243 parcels and averaging all of the sales prices for the same parcels, that the DOR determined that a 30% adjustment upward to the appraised values in Area 2.1 was necessary. Based on this determination, every residential property in Area 2.1, including those in the 243 sales, were raised by that percentage.

STAB produced for us the effect of the 30% increase on each of the 243 sales. The following are some samples taken from that exhibit:

## Samples of effect on residential appraised
## values used in Area 2.1 Analysis

| 1989 Appraised Value | Sale Price | Ratio | 1990 Adjusted Appraised Value |
|---|---|---|---|
| 46,497 | 24,000 | 1.9374 | 61,346 |
| 18,383 | 10,000 | 1.8383 | 23,848 |
| 30,920 | 21,600 | 1.4315 | 40,196 |
| 101,947 | 100,000 | 1.0195 | 132,531 |
| 23,944 | 23,500 | 1.0189 | 31,127 |
| 16,953 | 17,000 | 0.9972 | 22,039 |
| 13,604 | 27,000 | 0.5039 | 17,685 |
| 12,543 | 24,900 | 0.5037 | 16,306 |
| 21,386 | 42,600 | 0.5020 | 27,802 |

(The first three samples were at the top of the overappraised scale; the middle three samples were appraised approximately at their sales value; the last three samples are at the bottom of the underappraised scale.)

It may be demonstrated by the above samples that equalization is not achieved by the application of the 30% factor but rather that any inequality of appraisal is exacerbated by the factor. For example, the first property, which sold for $24,000 in 1989 but was appraised for $46,497 is now assessed after the application of the factor, at $61,346. That same property was overappraised in relation to its sales price at 193% before the application of the factor, but is overappraised 255% after its application.

Examples of unfairness are demonstrated by those properties which were in 1989 appraised at or near their actual sales value. The property whose sales price was $100,000 but was appraised at $101,947 was 100.9% overappraised in 1989, but will be 132% overappraised in 1990.

13

Strangely, the underappraised properties fare better in comparison to others when the 30% factor is applied. The last property, whose sales price was $42,600, was appraised at $21,386, or at 50% of its value. After the application of the 30% factor, the increase in its appraised value results only in the figure of 65% of its actual sales price.

We determine, therefore, from the record that the methodology prescribed by the legislature and implemented by the DOR for yearly equalization between areas unfairly discriminates against property taxpayers in Area 2.1 whose properties in 1989 were appraised at or above their market values.

If, as we are led to believe, the area study is statistically sound, the remainder of residential properties in Area 2.1 beyond the 243 parcels here studied must have the same resulting unfairness in the same proportions. Therefore, all residential properties in Area 2.1 which in 1989 were assessed or appraised at or above their true market values are unfairly discriminated against by the application of the 30% factor to the 1989 appraised values.

Discriminatory unfairness is countermanded by state constitutional and statutory provisions. The state is required to appraise property for tax purposes and to equalize the valuations of all property to be taxed. (Art. VIII, § 3). All taxable property in the state is to be assessed at 100% of its market value. Section 15-8-111(1), MCA. The DOR is required to adjust and equalize the valuations of taxable property among the several

14

counties and the different classes of taxable property in any county and in the several counties between individual taxpayers. Section 15-9-101(1), MCA. For purposes of taxation, assessed value is the same as appraised value, and with certain exceptions, property is assessed at 100% of its market value; market value is defined as the value at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. Sections 15-8-111(1)(2)(a), and (4), MCA. The DOR and its agents may not adopt a lower or different standard of value from market value in making official assessments or appraisals of the value of property unless within certain exceptions set forth in § 15-8-111(3), MCA.

In Patterson v. State DOR of Revenue (1976), 171 Mont. 168, 557 P.2d 798, this Court held valid the statutory plan for the five-year reappraisal cycle. The decision was based on features of the plan in that all like property was to be appraised by a uniform standard according to uniform valuation procedures set forth in the same designated appraisal manual. The appraisal rotation was fixed by a uniform rule requiring the property that had gone longest since appraisal and was deemed to be the most devious from current values to be appraised first. The Patterson decision was based on a plan which allowed counties to reappraise 20% of the properties every year during the five-year cycle. That provision was eliminated by the legislature in its 1989 enactment

and the yearly changes in individual valuations are now based on studies conducted under the stratified sales assessment ratio theory.

However, in Patterson, it was held that the placing of revaluations on the tax rolls annually and sequentially as the reappraisals are completed, which resulted in temporary inequities, did not offend the constitutional equal protection and uniformity requirements in the absence of intentional and systematic discrimination, constructive fraud, or arbitrary action. Patterson, 557 P.2d at 803.

In Larson v. State and DOR of Revenue (1975), 166 Mont. 449, 534 P.2d 854, we had a case where the DOR had assumed its new responsibilities under the 1973 legislative acts for statewide appraisal, but the DOR had determined to use a county-financed appraisal (called the Laird appraisal) for 1974 Lewis and Clark County assessments. The District Court had found that the real estate appraisals under the Laird procedure were not conducted as a part of a uniform plan for appraisal within the state of Montana, and that the appraisals were not equalized with other counties in the state. The District Court held that the use of the Laird appraisal was unconstitutional, and the case came to this Court on appeal. In upholding the decision of the District Court that the use of the Laird appraisal was unconstitutional, this Court stated:

> Accepting as facts the absence of a state-wide appraisal plan and the disproportionate appraisal made on Lewis and Clark property, we return to the legal questions presented. The district court concluded that the adoption of the Laird appraisal would require taxpayers to bear a disproportionate share of Montana's tax burden,

in violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution and Article II, § 4, 1972 Montana Constitution. The use of the appraisal was also found to violate the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Sections 17 and 29, 1972 Montana Constitution. Finally, the district court found the appraisal violated the provisions of Title 84, Chapter 4, R.C.M. 1947, which require general and uniform appraisal, and assessment and equalization of all taxable property in the state.

. . .

A "general and uniform method of appraising" necessarily requires that each appraisal or reappraisal must be a part of a plan which provides that all similar properties will be valued in like manner. The plain meaning of the statutory language admits of no other interpretation. The absence of such a plan, as discussed earlier in this opinion, thus prevents lawful implication of the Laird appraisal.

Larson, 534 P.2d at 857-58.

The Larson court noted that there was an abundance of authority which finds no violation of constitutional or statutory mandates in the temporary inequalities which accompany a cyclical plan of reappraisal. Larson, 534 P.2d at 857. It also noted that violations of statutory uniformity requirements generally result in violations of equal protection requirements.

In this case, we have no way of knowing whether the inequities in valuations in Area 2.1 are temporary or not. Presumably, the DOR will annually make ratio studies and apply factors to increase or reduce the valuations in Area 2.1 if the average valuations are outside the 5% parameters. It might be hoped that any valuation inequities resulting from the ratio studies might be rectified by the values found at the end of the current revaluation cycle; yet, those values under the law may not be placed on the tax rolls until

17

one year following the completion of the revaluation cycle, § 15-7-111(2), MCA, which, if not again extended, would occur in tax year 1994. Under the record here, the DOR itself will make no move to rectify inequities because of its interpretation that it is bound by law not to do so. Section 15-7-111, MCA. The legislative provisions for the application of the ratio studies include no plan for rectifying appraisal inequities which may fall upon individual property holders through application of the factors derived through the ratio.

We therefore determine in accord with Larson that the use of the 1990 tax values derived from the ratio studies and the application of the 30% factor to residential properties in Area 2.1 require certain taxpayers therein to bear a disproportionate share of Montana's tax burden in violation of the Equal Protection requirements of the Fourteenth Amendment of the United States Constitution, and Art. II, § 4, 1972 Montana Constitution, and the Due Process requirements of the Fifth and Fourteenth Amendments of the United States Constitution and Art. II, §§ 17 and 29 of the 1972 Montana Constitution. This also violates the appraisal provisions of our statutes which require general and uniform appraisal, assessment and equalization of all taxable property in this state.

This is not to say that the legislature does not have the power to change appraisal values during the appraisal cycle. In Hanley v. DOR of Revenue (1983), 207 Mont. 302, 309, 673 P.2d 1257, 1260, this Court said:

> There can be no doubt that the power to equalize includes the power to alter an appraisal cycle . . . We therefore hold that DOR has the authority, when acting under its power to equalize, to change the taxable value of property in this state within an appraisal cycle to comply with its constitutional mandate to tax on a uniform basis.

It behooves the Court to note that the result of the DOR report relating to actual sales and appraised values in Area 2.1 should make clear to the DOR, and now to the legislature, that there is a wide disparity in appraised values of residential properties in that area when compared to actual sales values. In that situation, the indiscriminate application of an across-the-board 30% factor would necessarily exacerbate the values of those properties which are already assessed at or near market value or in excess thereof. Such a method may achieve equalization as between areas, but not between individual properties in the areas, where appraisal inequities already exist. Certainly the ratio study indicates that Area 2.1 should be targeted for a complete reappraisal even before the end of the valuation cycle. Equalization between areas will automatically result when all the valuations in the individual areas are at or near market value.

## THE POWER OF STAB AND THE RIGHT OF APPEAL

The DOR contends two issues arise in this case relating to STAB. The DOR contends that STAB has no power to ignore the administrative rules which are adopted in accordance with § 15-7-111, MCA, nor to declare a statute is unconstitutional. However, the record shows that STAB skirted the constitutional issue by declaring its belief that a court, if asked, would determine the

19

assessment ratio studies and the application thereof unconstitutional. As to the administrative rules, § 15-2-301(4), MCA, provides that "the state tax appeal board must give an administrative rule full effect unless the board finds any such rule arbitrary, capricious or otherwise unlawful."

STAB in its response contended that this Court should throw out the amendments adopted by the legislature in 1987 and 1989 because of the provision in § 15-7-102(6), MCA, to the effect that "the property owner may not appeal the yearly percentage adjustments that are specified in 15-7-111, and that may be made as a result of the sales assessment ratio study, the stratum, or area designations as specified in 15-7-111."

Article VIII, § 7, of the Montana Constitution, provides:

**Tax appeals.** The legislature shall provide independent appeal procedures for taxpayer grievances about appraisals, assessments, equalization, and taxes. The legislature shall include a review procedure at the local government unit level.

Section 15-7-111(4), MCA, provides:

(4) For the taxable year beginning January 1, 1990, and for every taxable year thereafter, the department shall conduct a stratified sales assessment ratio study of all residential land and improvements, agricultural 1-acre homesites and improvements, and commercial land and improvements. The sales assessment ratio based on property sales finalized and recorded by no later than November 1 must be used to determine appraisals for the immediately succeeding tax year.

Section 15-7-102(6), MCA, provides:

(6) . . . The property owner may not appeal the yearly percentage adjustments that are specified in 15-7-111 and that may be made as a result of the sales assessment ratio study, the stratum, or area designations as specified in 15-7-111.

20

Clearly, Art. VIII, § 7, Montana Constitution, guarantees the constitutional right of appeal procedures for a taxpayer concerning appraisals and assessments.

It is also equally clear that § 15-7-111(4), MCA, required the DOR to conduct an annual stratified sales assessment ratio study beginning January 1, 1990, and for every taxable year thereafter and that the sales assessment ratio derived therefrom must be used to determine appraisals for the immediate succeeding tax year, and § 15-7-102(6) provides that the property owner may not appeal as a result of the sales assessment ratio study.

Therefore, the provision of § 15-7-102(6), providing "[t]he property owner may not appeal the yearly percentage adjustments that are specified in 15-7-111 and that may be made as a result of the sales assessment ratio study, the stratum, or area designations as specified in 15-7-111," is unconstitutional as a violation of Art. VIII, § 7, of the Montana Constitution.

Notwithstanding that the non-appeal provision of § 15-7-102(6), MCA, may not be essential to our decision in this case, we believe it is important that the DOR and the legislature be made fully aware of the requirements of Art. VIII, § 7, with regard to any future legislation or rule-making.

THE CASE OF PATRICIA C. BARRON

This whole case was brought about by the appeal of Patricia C. Barron to the County Tax Appeal Board, and then to STAB itself regarding the constitutionality of the increased adjustment to her residential property valuation for tax purposes.

21

STAB, in determining that the application of the ratio studies to Area 2.1 was improper, did not restore Patricia C. Barron to the 1989 appraisal of her residential property. Instead, it determined that because the purchase price of the home in which she lives was $75,000, it should be appraised at $75,000 as a reflection of its market value.

In DOR of Revenue v. State Tax Appeal Board (1980), 188 Mont. 244, 249, 613 P.2d 691, 694, we quoted the United States Supreme Court saying:

> This Court holds that the right of the taxpayer whose property alone is taxed at 100 percent of its true value is to have his assessment reduced to the percentage of that value which others are taxed even though this is a departure from the requirement of statute. This conclusion is based on the principle that where it is impossible to secure both a standard and true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.

While the valuation of the Barron property at its market value is at 100% of its true value, it cannot be said that the application of that valuation reaches the uniformity and equality required by our laws. If anything, the study of Area 2.1 reveals that there is very little equality or uniformity in the valuation of the 243 properties studied. Because Patricia C. Barron undertook to appeal the application of the 30% adjustment to her residential property, and bore the burden of litigation to bring to the DOR and this Court the problems arising out of the ratio studies, she is entitled to the beneficial fruits of her litigation. We therefore reverse the valuation of her residential property fixed at $75,000, and direct that the valuation of that residence for tax purposes

22

shall be the valuation which obtained in 1989. Nothing herein prevents a proper revaluation of her residential property in accordance with statutory and constitutional principles in subsequent years.

CONCLUSION

The power of supervisory control given to this Court does not apply in this case because STAB is not a court in the contemplation of Art. VII, § 2(2) of the State Constitution.

We find and determine, however, in this original proceeding proper grounds to award the following declaratory and affirmative relief:

> 1. The provisions of § 15-7-111, MCA, relating to stratified sales assessment ratio studies of the residential property situated in Area 2.1 (Great Falls Downtown) as conducted and applied by the DOR are invalid because they violate state constitutional and statutory provisions which require general and uniform appraisal, assessment and equalization of all taxable property in the state; and further because the applications thereof require certain taxpayers in Area 2.1 to bear a disproportionate share of Montana's tax burden, in violation of the Equal Protection requirements of the Fourteenth Amendment to the United States Constitution and Art. II, § 4, 1972 Montana Constitution; and because the application of the stratified sales assessment ratio study to Area 2.1 violates the Due Process requirements of the Fifth and Fourteenth Amendments of the United States Constitution and Art. II, § 17 and 29, 1972 Montana Constitution.
>
> 2. The provision of § 15-7-102(6), MCA, that states: "The property owner may not appeal the yearly percentage adjustments that are specified in 15-7-111 and that may be made as a result of the sales assessment ratio study, the stratum, or area designations as specified in 15-7-111," is in violation of Article VIII, § 7, of the Montana Constitution.
>
> 3. The valuation for tax year 1990 of the residential property of Patricia C. Barron in Area 2.1 established by STAB should be and is hereby reversed, and STAB and

all agents of the DOR shall fix the appraised value of the said residential property of Patricia C. Barron at the valuation which obtained in the tax year 1989.

4. Because of the statewide effect of this decision, because of the short period of time remaining for state and county offices to perform their duties in connection with the collection of property taxes for the year 1990, and the extenuating exigencies which would otherwise be created by an immediate effect of this decision, we hereby delay the effective date of this decision, and make its effect prospective only to December 31, 1990, except for those cases now pending on appeal, or properly appealed by the property owners. (This means those cases heretofore appealed within the time provided for taxpayer appeals at the local or state level and now pending on the grounds of unconstitutionality found to exist in this proceeding, and includes those previously appealed on those grounds and denied at the county or state level; but, no other appeals on the grounds covered herein shall be recognized.) The effect of this prospective stay is that as to all property affected by the stratified sales assessment ratio studies, except those herein stated, the values for tax purposes for the tax year 1990 shall be those found and applied by the DOR under said studies.

5. When copies hereof are served by ordinary mail by the Clerk of this Court upon counsel of record, this Opinion shall have the effect of, and perform the office of, a declaratory judgment granting affirmative relief without further documents or process from this Court. It shall be effective on the date of service.

We grant the stay only to prevent the disruption of the state taxation process for the tax year 1990 and because the legislature will meet and may address these problems in a session beginning on the first Monday of January, 1991.

Prospective application of the effect of this Opinion past the 1990 tax year as absolutely imperative should be at once apparent, but some question prospective delay when the underlying act is unconstitutional. How, it is argued, can a court allow to remain legal what it has declared to be illegal? The answer lies in the choice that must be made by the Court as to whether it will allow

government to continue in an orderly fashion at the expense of some, or else permit virtual anarchy to exist. Were the illegality in this case declared to take effect immediately, it would mean that tax collections for the support of state, county, school district and municipal government dependent on property taxes would be thrown into immediate disfunction. There is lurking in this case a huge legislative and executive problem, and these branches must be given a chance to deal properly with that problem. Despite the unconstitutionality of the appraisal system here involved, the fashioning of a constitutional system is a proper duty of the legislative department, and not of this Court.

This Court has not hesitated to delay the effect of its decision that an act is unconstitutional when the immediate effect of the decision would disrupt government, and the legislature can be given an opportunity to rectify the unconstitutionality. Lee v. State (1981), 195 Mont. 1, 11, 1635 P.2d 1282, 1287, cert.denied 456 U.S. 1006, 102 S.Ct. 2295, 73 L.Ed.2d 1300; Helena Elementary School Dist. No. 1 v. State (Mont. 1990), 784 P.2d 412, 413. Other state courts have done likewise. Edgewood Independent School District v. Kerby (Tex. 1989), 777 S.W.2d 391, 399; Horton v. Meskill (Conn. 1977), 376 A.2d 359, 376; Washakie County School Dist. v. Herschler (Wyo. 1980), 606 P.2d 310, cert.denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); Robinson v. Cahill (N.J. 1973), 303 A.2d 273, 298, cert.denied 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219.

Costs of proceedings, but not attorneys fees, to Patricia C. Barron.

_____
John C. Sheehy
Justice

We concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____
Diane G. Barz

_____
William E. Hunt Sr.

_____
R. C. McDonough

_____
Fred J. Weber
Justices

26