

DA 10-0394

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 141

PUGET SOUND ENERGY, INC.,

        Petitioner and Appellee,

  v.

STATE OF MONTANA, DEPARTMENT
OF REVENUE,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DV 09-1081
                    Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                C.A. Daw (argued), Derek Bell, and Courtney Jenkins, Special Assistant
                Attorneys General, Montana Department of Revenue, Helena, Montana

        For Appellee:

                Michael Green (argued), Crowley Fleck, PLLP, Helena, Montana

                David J. Crapo, Crapo Smith, LLC, Salt Lake City, Utah

                              Argued and Submitted: May 17, 2011
                                    Decided: June 21, 2011

Filed:

                     _____
                               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Montana Department of Revenue (Department) appeals the judgment of the Thirteenth Judicial District Court, Yellowstone County that concluded that the State Tax Appeal Board (STAB) could not assess Puget Sound Energy's (Puget) market value in excess of the Department's original assessment. We reverse.

¶2     We review the following issue on appeal:

¶3     *Did the District Court correctly conclude that STAB may not assess Puget's market value in an amount that exceeds the Department's original assessment?*

FACTUAL AND PROCEDURAL BACKGROUND

¶4     The Department issued final ad valorem assessments of Puget for the 2005, 2006, and 2007 tax years. Puget petitioned STAB for review of the Department's assessments. STAB held a hearing over eight days. STAB determined that the Department inaccurately had assessed Puget's value. STAB assessed Puget's value in excess of the Department's original assessment. Puget petitioned the District Court for review. The court concluded that STAB could not adopt an assessment value that exceeded the Department's original assessment and remanded to STAB. The Department appeals only the court's determination that STAB improperly had increased Puget's taxable values.

¶5     The Department's appraiser, John Cameron, appraised Puget for the tax years 2005, 2006, and 2007. Cameron's original-cost-less-depreciation method valued Puget at $3.76 billion for 2005, $4.09 billion for 2006, and $4.69 billion for 2007. Cameron correlated the

2

original-cost-less-depreciation values with the other indicators of value to reach correlated unit values of $3.74 billion for 2005, $4.09 billion for 2006, and $4.66 billion for 2007.

¶6 Puget directly petitioned STAB for review of Cameron's determinations of value. Puget did not request an administrative hearing with the Department's Office of Dispute Resolution. Puget's petition to STAB contended that "[t]he Department has over-valued [Puget's] Montana property for all years at issue. In each case, the assessed value determined by the Department exceeds the fair market value of [Puget's] Montana properties." Puget's pre-hearing brief and post-hearing brief, as well as the agreed-upon pre-hearing conference order, state that Puget had requested that STAB make an "ultimate determination of market value" and assess Puget in an amount that reflects market value.

¶7 Puget and the Department each retained expert witnesses for the STAB proceedings. Puget's expert, John Davis, issued an independent expert appraisal that the parties admitted into evidence as a stipulated exhibit. Davis used an historical-cost-less-depreciation approach to reach values of $3.17 billion for 2005, $3.17 billion for 2006, and $3.34 billion for 2007. Davis calculated correlated unit values of $2.85 billion for 2005, $2.86 billion for 2006, and $3.00 billion for 2007.

¶8 The Department's expert, Brent Eyre, prepared an independent expert appraisal. Puget deposed Eyre regarding his appraisal before the STAB hearing. The parties stipulated to the admissibility of Eyre's appraisal report. Eyre's original-cost-less-depreciation approach produced values of $3.77 billion for 2005, $4.17 billion for 2006, and $4.69 billion for 2007. Eyre reached correlated unit values of $3.98 billion for 2005, $4.32 billion for

2006, and $4.68 billion for 2007. Puget's witnesses challenged the validity of Eyre's calculations. Puget also used Eyre's calculations to contest the calculations of the Department's original appraiser, Cameron.

¶9 STAB informed the parties that it felt "some independent responsibility" to determine the "appropriate value" for Puget. STAB identified several flaws in Cameron's assessment. STAB discredited Cameron's assessment due to a number of deficiencies. Cameron never had prepared a utility appraisal before 2005. Cameron did not hold any appraisal designations. Cameron had attended only one workshop before completing the Puget appraisal. The Department had failed to show that it supervised Cameron properly in the preparation of his appraisal. STAB pointed to testimony from Eyre that had identified material mistakes in Cameron's assessment. STAB concluded that it could not afford the Department's appraisal a presumption of correctness.

¶10 STAB relied instead on the appraisals prepared and submitted by Eyre and Davis. STAB found Eyre's independent assessment of market value more credible and persuasive than Davis's assessment. STAB determined that Eyre's appraisals most closely comported with the evidence presented during the STAB hearing. STAB adopted Eyre's values as those that most closely reflected Puget's market value.

¶11 STAB did not adopt Eyre's assessments wholesale. STAB disagreed with an adjustment made by Eyre under the original-cost-less-depreciation method. Eyre believed that Puget's contract to transport power on Bonneville Power Administration's (BPA) power lines constituted a beneficial use taxable under § 15-24-1203, MCA. Section 15-24-1203,

4

MCA, imposes a tax on the possession or beneficial use of electric transmission lines. The Department and Eyre had not included the value of the beneficial use of the BPA's lines in their original-cost-less-depreciation method. The Department and Eyre both believed that the value of the contract could be taxed separately under § 15-24-1203, MCA, and added to the Montana allocated value.

¶12 Puget argued that this approach constituted double taxation. Puget advocated that STAB incorporate the BPA contract value into the original-cost-less-depreciation indicator of value. This change would decrease Puget's ultimate tax liability. STAB agreed. STAB reached an original-cost-less-depreciation value of $3.80 billion for 2005, $4.19 billion for 2006, and $4.71 billion for 2007. STAB's correlated unit value for Puget resulted in a value of $3.98 billion for 2005, $4.33 billion for 2006, and $4.68 billion for 2007. STAB's adoption of the slightly higher Eyre values, coupled with STAB's addition for the BPA contract value, resulted in original-cost-less-depreciation indicators and correlated unit values for Puget that exceeded both Cameron's and Eyre's assessments.

¶13 Puget petitioned the District Court for judicial review. Puget argued that STAB lacked the authority to raise the appraised values or adopt an appraised value greater than the Department's original assessment. The District Court agreed that STAB could not adopt a market value that exceeded the Department's original assessment. The District Court also remanded several legal issues to STAB for further consideration, explanation, or clarification. The Department appeals only the issue of whether STAB has the authority to determine that Puget's market value exceeds that of the Department's original assessment.

5

STANDARD OF REVIEW

¶14    We review for correctness a district court's conclusions of law. *PacifiCorp v. State,* 2011 MT 93, ¶ 15, 360 Mont. 259, __ P.3d __.  A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether STAB correctly has interpreted the law. *Id., O'Neill v. Dept. of Revenue,* 2002 MT 130, ¶ 10, 310 Mont. 148, 49 P.3d 43.  We apply the same standard of review to an administrative appeal as the district court applies. *O'Neill*, ¶ 10.

¶15    Section 15-2-302, MCA, governs direct appeals to STAB from Department appraisals of centrally assessed property.  Courts conduct judicial review according to the Montana Administrative Procedures Act (MAPA) and § 15-2-303, MCA.  Section 15-2-302(5), MCA. MAPA sets forth the standard of judicial review in administrative proceedings at § 2-4-704, MCA.

¶16    We defer to STAB's findings unless they are clearly erroneous, because STAB is particularly suited for settling disputes over the appropriate valuation of property. *PacifiCorp*, ¶ 15.  A decision of STAB may be affirmed or remanded for further proceedings.  Section 2-4-704(2), MCA.  A court also may reverse or modify a decision of STAB if STAB's findings, inferences, or conclusions are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and prejudices the taxpayer's substantial rights. *Id.*

DISCUSSION

¶17 *Did the District Court correctly conclude that STAB may not assess Puget's market value in an amount that exceeds the Department's original assessment?*

¶18 Montana law requires the Department to assess taxable property at 100% of its market value. Section 15-8-111(1), MCA. Section 15-8-111(2)(a), MCA, defines market value as "the value at which property would change hands between a willing buyer and a willing seller." The Department centrally assessed Puget's value according to the unit method of valuation. Section 15-23-101, MCA; Admin. R. M. 42.22.102 to 42.22.111. The unit method of valuation calculates the value of a business's entire operating system as a going concern and as a single entity. Admin. R. M. 42.22.101(32). This calculation includes all tangible and intangible operating assets of the company. Admin. R. M. 42.22.101(33).

¶19 The unit method authorizes the appraiser to consider cost, income, and market approaches to determine a business's market value. Admin. R. M. 42.22.111(1). The Department calculated five separate indicators of value for each of the subject years. Puget argued to the District Court that inaccuracies existed in several of the Department's indicators of value. The issue before this Court involves only the Department's original-cost-less-depreciation method for calculating value. The original-cost-less-depreciation method derives value by subtracting depreciation from the historic or original cost of the company's taxable assets. Admin. R. M. 42.22.112(2).

¶20 The Department next correlates the indicators of value into a single value called the correlated unit value. Admin. R. M. 42.22.111(2)-(3). The Department gave Puget's original-cost-less-depreciation indicator a 70% correlation weight. The Department then

7

multiplied the correlated unit value by an allocation factor that represented the amount of Puget's property located within the state of Montana. The Department further adjusted the value to reach a final value to be "distributed to the taxing jurisdictions."

¶21 STAB agreed with Puget that the Department's original appraisal contained serious flaws. STAB adopted values from Eyre's independent appraisal even though Eyre's appraisal contained values that exceeded the Department's appraisal. The District Court based its conclusion that STAB could not raise Puget's assessment on the fact that §§ 15-2-201(1)(d) and -302, MCA, permitted appeals to STAB only by the taxpayer. The court noted that the statutes made no mention of appeals to STAB by the Department.

¶22 The court also concluded that STAB's upward adjustment violated Puget's right to due process because Puget had no notice that STAB would increase its assessed market value. The court dismissed out of hand the Department's contention that the mandate for 100% market value assessments in § 15-8-111(1), MCA, put Puget on notice that STAB could increase the Department's assessment if the Department's assessment did not reflect 100% market value.

¶23 The Department argues that the statutory scheme and case law demonstrate that STAB serves a fact-finding function beyond the appellate function envisioned by the District Court's interpretation of §§ 15-2-201(1)(d) and -302, MCA. Section 15-2-201(1)(d), MCA, authorizes STAB to "hear appeals from decisions of the department of revenue." Section 15-2-302(1)-(2), MCA, specifically permits corporations to appeal by filing a complaint with STAB. STAB immediately must transmit a copy of the complaint to the Department.

8

Section 15-2-302(2), MCA. The Department must file an answer with STAB within 30 days. Section 15-2-302(3), MCA.

¶24 We agree that the statutory scheme provides no avenue for the Department to appeal its own decisions to STAB. This determination bears no importance, however, on the issue presented. The Department has not attempted to file a complaint with STAB. The Department has not initiated STAB's authority to settle the contested valuation of Puget's property. Puget filed the complaint. Puget brought to STAB the dispute over the market value of its property. The Department has raised in this Court only the issue of whether STAB has authority to reach a market value of Puget's property that exceeds the Department's flawed assessment.

¶25 The Montana Constitution requires an "independent appeal procedures for taxpayer grievances about appraisals, assessments, equalization and taxes." Mont. Const. art. VIII, § 7. Section 15-2-201(1)(d), MCA, authorizes STAB to "hear appeals from decisions" of the Department in regard to property assessments. The District Court adopted the definition of "appeal" from www.dictionary.com as "an application or proceeding for review by a higher tribunal." The District Court's reliance on the dictionary definition ignores the statutory scheme governing STAB.

¶26 Section 15-2-302, MCA, sets forth the procedure for an appeal from a taxpayer of centrally assessed property. STAB must conduct the direct appeal from the Department's final decision in accordance with the contested case provisions of MAPA. Section 15-2-302(4), MCA. MAPA provides for "Contested Cases" at Title 2, Chapter 4, Part 6. These

9

provisions outline the process for notice, discovery, informal hearings, hearing examiners, hearings rules, records, final orders, and other procedural rules. Sections 2-4-601 to -631, MCA. MAPA's hearing provision provides for the presentation of evidence in accordance with common law and statutory rules of evidence, the taking of testimony under oath, the opportunity for cross examination, the taking of judicial notice of cognizable facts, and the exercise of STAB's expertise, technical competence, and specialized knowledge in evaluating the evidence. Section 2-4-612, MCA.

¶27 In comparison, § 15-2-301, MCA, provides for STAB's review of appeals from the County Tax Appeal Boards (CTAB). CTABs hear appeals from taxpayers regarding the tax appraisals of their property. Sections 15-15-101 to -104, MCA. A taxpayer can appeal a determination of the CTAB to STAB. Sections 15-15-104, 15-2-301, MCA. STAB may determine appeals from CTABs "on the record" developed in proceedings before the CTAB. Section 15-2-301(2), MCA. STAB can consider "in its discretion" a copy of the CTAB transcript, additional sworn statements, and further testimony. *Id.*

¶28 STAB's function differs depending on whether the appeal derives from the CTABs pursuant to § 15-2-301, MCA, or from a taxpayer on direct appeal pursuant to § 15-2-302, MCA. No provision similar to § 15-2-302(4), MCA, incorporates the "contested case provisions" of MAPA when STAB hears and determines an appeal from a decision of CTAB. In fact, the statutory scheme for appeals from CTAB "supersedes" MAPA to the extent that § 15-2-301, MCA, conflicts with MAPA. Section 15-2-301(4), MCA. Both

§§ 15-2-301 and -302, MCA, use the word "appeal," but an appeal from a CTAB contemplates STAB serving in a role more like a typical appellate body.

¶29   A direct appeal under § 15-2-302, MCA, like Puget's, requires STAB to serve a fact-finding function. STAB could not possibly serve as an appellate body over direct appeals under § 15-2-302, MCA, when no record, like that developed in the CTABs, ever has been created. The legislature would have constructed § 15-2-302, MCA, similar to § 15-2-301, MCA, or the judicial review provisions at §§ 2-4-701 to -711, MCA, had it not intended for STAB to serve as a fact-finding tribunal over direct appeals.

¶30   This Court likewise has classified "any appeal to the State Tax Appeal Board from [the Department's] final determination" as a "trial de novo." *W.R. Grace & Co. v. Dept. of Revenue,* 173 Mont. 339, 343-44, 567 P.2d 913, 916 (1977); *Dept. of Revenue v. Burlington N. Inc.,* 169 Mont. 202, 213-14, 545 P.2d 1083, 1090 (1976). This Court regularly has deferred to STAB's expertise on taxation matters and has upheld STAB's decision to affirm the Department's assessment or reduce the Department's assessment. *PacifiCorp,* ¶ 36; *State v. PPL Mont., LLC*, 2007 MT 310, ¶ 45, 340 Mont. 124, 172 P.3d 1241; *O'Neill,* ¶ 23.

¶31   The parties have identified only one case, *Montana Department of Revenue v. Barron,* 245 Mont. 100, 799 P.2d 533 (1990), in which this Court has considered a situation where STAB increased the Department's assessment. Puget argues that *Barron* stands for the principle that STAB cannot penalize the taxpayer by increasing the Department's assessment and thereby strip the taxpayer of "the beneficial fruits of her litigation." Puget claims that, until its appeal, STAB has refused to increase the Department's tax assessment pursuant to

11

this *Barron* principle. Puget acknowledges that *Barron* and other STAB decisions have involved appeals from CTABs, but argues that *Barron*'s rationale should be applied to a centrally assessed taxpayer challenging an assessment pursuant to § 15-2-302, MCA. We disagree.

¶32 The Department in *Barron* filed an original proceeding in this Court. *Barron,* 245 Mont. at 101-02, 799 P.2d at 534. The Department requested that this Court overturn STAB's determination that a newly enacted appraisal process violated the Montana Constitution's mandate that the State equalize the valuation of all property. *Id.* at 104, 799 P.2d at 535. The taxpayer, Patricia Barron, challenged the Department's 1990 determination that her property's taxable value should be raised from $28,019 to $40,325. *Id.* at 103-04, 799 P.2d at 535. The rise in value resulted from the Department's new appraisal method that attempted to capture the actual market value of property. *Id.*, 799 P.2d at 534-35.

¶33 Barron appealed first to the CTAB. *Id.* at 104, 799 P.2d at 535. The CTAB denied her appeal based on information that the Department would correct voluntarily its assessment. *Id.*, 799 P.2d at 535. Barron then appealed to STAB. *Id.*, 799 P.2d at 535. STAB found the Department's new appraisal process improper, rejected the Department's $40,325 appraisal, and assessed Barron's property at its purchase price of $75,000. *Id.* at 113-14, 799 P.2d at 541. This Court reversed the increased value assessed by STAB on the grounds that the new appraisal method violated the Montana Constitution. *Id.* at 114, 799 P.2d at 541. The Court added in dicta that Barron deserved "the beneficial fruits of her

12

litigation" because she brought "to the DOR and this Court the problems arising" out of the newly enacted appraisal process. *Id.*, 799 P.2d at 541.

¶34 *Barron* has no precedential or persuasive value for the present issue before the Court. *Barron* did not discuss STAB's authority under § 15-2-302, MCA. *Barron* did not involve a due process challenge to the procedural provisions governing STAB. Most importantly, *Barron* did not determine that Patricia Barron's tax assessment should be returned to its pre-1990 levels simply because she "bore the burden of litigation" or deserves "the beneficial fruits of her litigation." The Court in *Barron* restored the pre-1990 appraisal values because the Department's newly enacted appraisal method violated constitutional protections for equalized valuations, equal protection, and due process. *Id.* at 114-15, 799 P.2d at 541-42. We reject Puget's argument that the "beneficial fruits" dicta in *Barron* precludes STAB from raising Puget's tax assessment to reflect its market value.

¶35 In contrast to the constitutional claims raised in *Barron*'s original proceeding action, Puget directly appealed the Department's assessments pursuant to § 15-2-302, MCA. STAB heard Puget's appeal from the Department's decisions. Section 15-2-201(1)(d), MCA. STAB conducted its proceedings according to the contested case provisions of MAPA as incorporated by § 15-2-302(4), MCA. No record had been developed outside STAB's proceedings.

¶36 STAB afforded the parties "an opportunity for hearing after reasonable notice" of the "matters asserted." Section 2-4-601, MCA. STAB provided the parties with the opportunity "to respond and present evidence and argument on all issues involved." Section 2-4-612(1),

13

MCA. STAB provided the parties the right to conduct the cross-examinations required for the full disclosure of facts. Section 2-4-612(5), MCA. STAB rendered a final, binding decision over the parties subject to judicial review. Sections 2-4-623, 15-2-302(5), MCA. STAB's compliance with the contested case provisions of MAPA reflect its role as the fact-finding tribunal when a taxpayer raises a direct appeal under § 15-2-302, MCA.

¶37 STAB possesses authority to assess a taxpayer's market value at 100% market value, even if the assessment exceeds the Department's original assessment. To conclude otherwise would hamstring STAB's authority to conduct a contested case under MAPA and to reach an independent assessment. The statutory mandate that all property "must be assessed at 100% of its market value" applies equally to the Department and to STAB. Section 15-8-111(1), MCA. No exception exists for STAB to assess a centrally assessed taxpayer's property at less than 100% market value simply when the Department may have botched its initial assessment.

¶38 We turn to Puget's due process claim. Puget argues that the Department requested only that its original assessments be affirmed. Puget contends, as a result, that STAB cannot increase Puget's assessed value by adopting Brent Eyre's analysis. The District Court relied on *DeVoe v. Department of Revenue*, 263 Mont. 100, 866 P.2d 228 (1993), to conclude that STAB could not reach a taxable market value in excess of the Department's assessment when the Department's pleadings had not requested increases in value.

¶39 This Court in *DeVoe* determined that a taxpayer who successfully had challenged an adverse STAB decision could not recover attorney fees because the taxpayer had not notified

14

the Department that he sought fees "in either his petition or his arguments *to the District Court*." *Id.* at 118, 866 P.2d at 239 (emphasis added). Puget makes no claim here that it lacked notice in the District Court proceedings. Puget claims only that it lacked notice in the STAB proceedings that STAB had authority to conclude that Puget's market value exceeded the Department's assessment.

¶40 We disagree with Puget that it lacked notice that STAB could increase its assessed value. Puget's own argument that STAB should add the value of the BPA contract to the original-cost-less-depreciation indicator belies its assertion that STAB could not increase the Department's assessment values. Further, Puget asserted in its pre-hearing and post-hearing briefs that STAB must make the "ultimate determination of market value." The parties agreed in the pre-conference order that STAB should "enter an order assessing the ad valorem property tax against [Puget's] property in an amount that reflects the fair market value of its Montana property." Puget squarely placed the issue of its market value before STAB for adjudication.

¶41 Puget further had an opportunity to review Brent Eyre's expert assessment before the STAB hearing. Puget deposed Eyre before the STAB hearing. Puget had notice that Eyre believed that Puget's value exceeded the Department's assessment. Puget retained an expert to rebut the Department's and Eyre's assessments. Puget filed post-hearing briefs and proposed findings of fact and conclusions of law that criticized Eyre's analysis, methods, and results.

15

¶42 STAB conducted an eight-day hearing. Puget makes no claim that STAB prevented it from presenting its evidence and argument. Puget had notice and an opportunity to cross-examine all the evidence presented by the Department that assessed its value at a greater value than the Department's original assessment. Puget has failed to explain how STAB's determination of Puget's market value violated its rights to notice and the opportunity to defend. We see no merit in its argument that it did not know STAB could reach an assessment that reflected its market value in compliance with § 15-8-111(1), MCA.

CONCLUSION

¶43 We reverse the District Court. STAB has the constitutional and statutory duty to hear Puget's appeal and make an independent determination of Puget's market value even if STAB's assessment exceeds the Department's original assessment. We reject Puget's argument that it lacked notice or an opportunity to respond to STAB's determination that Puget's market value exceeded the Department's original assessment.

¶44 The Department asserted at oral argument that in light of our decision in *PacifiCorp* we need not remand to the District Court if we concluded that STAB had the authority to raise Puget's assessment values. We disagree. Puget's appeal to the District Court may have included issues not addressed in *PacifiCorp* or by the narrow issue that the Department appealed in this case. We accordingly remand to the District Court for further proceedings consistent with this Opinion and our decision in *PacifiCorp*.

/S/ BRIAN MORRIS

We Concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE