No. 92-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CLAYTON E. DeVOE,

Petitioner and Respondent,

v.

DEPARTMENT OF REVENUE OF THE STATE OF
MONTANA, MISSOULA COUNTY, and FERN HART,
as MISSOULA COUNTY TREASURER,

Respondents and Appellants.

FILED

DEC 28 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David L. Nielsen (argued), Tax Counsel,
Montana Department of Revenue, Office
of Legal Affairs, Helena, Montana

Michael W. Sehestedt, Deputy Missoula
County Attorney, Missoula, Montana

For Respondent:

George C. DeVoe (argued), Attorney at Law,
Missoula, Montana

Submitted: July 29, 1993

Decided: December 28, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Petitioner Clayton E. DeVoe petitioned the District Court for the Fourth Judicial District of the State of Montana in Missoula County pursuant to § 15-2-303, MCA, for review of an adverse decision by the State Tax Appeal Board (STAB). After considering written and oral arguments of the parties and the record from the STAB, the District Court concluded that the STAB's decision was not supported by substantial credible evidence, and therefore, was clearly erroneous. The court reinstated the State Department of Revenue's (DOR) prior appraisals of petitioner's properties, and ordered the DOR to pay petitioner's attorney fees. The DOR appeals from the judgment of the District Court. We affirm in part and reverse in part.

On appeal, the DOR raises the following issues:

1. Did the District Court err when it ordered the DOR to assess the value of DeVoe's property for the appraisal cycle beginning in 1986 based on its assessed value prior to that date?

2. Did the District Court err when it ordered the DOR to apply the assessed value of DeVoe's property for 1986 to subsequent years during the same appraisal cycle?

3. Did the District Court err when it ordered the Missoula County Treasurer to provide DeVoe with a refund for 1986 and subsequent years during the same appraisal cycle?

4. Did the District Court err when it awarded attorney fees to DeVoe?

2

## FACTUAL AND PROCEDURAL BACKGROUND

Clayton DeVoe owned two pieces of property located in Missoula County. Property No. 1 included a duplex and a 28 unit apartment complex. For the appraisal cycle ending on December 31, 1985, the land and improvements had been appraised at a combined value of $255,360. For the appraisal cycle beginning January 1, 1986, the assessed value was increased by the DOR to $529,800.

Property No. 2 included a 67 unit apartment complex. The DOR's appraised value for that property for the cycle ending on December 31, 1985, was $645,550. However, for the cycle beginning January 1, 1986, the appraised value was increased by the DOR to $1,340,200.

DeVoe appealed these changes in the valuation of his real property to the Missoula County Tax Appeal Board on the grounds that the newly assessed values did not reflect the actual market value of either property as required by § 15-8-111, MCA. He asked that the appraised value be reduced to an amount no greater than the previous appraisals.

In a one-sentence decision, his appeals pertaining to both Property No. 1 and Property No. 2 were denied. The County Board stated that:

> Based on testimony and evidence, the Missoula County Tax Appeal Board finds that your <u>taxable valuation</u> has been reduced and your presentation indicates that your complaint has been fairly and equitably addressed and therefore, your appeal is denied. [Emphasis added].

3

While the County Board referred to the "taxable valuation" of DeVoe's property, no reference was made in its decision to the "assessed valuation" which was the subject of his appeal.

On July 1, 1986, DeVoe timely appealed the County Board's decision to the STAB pursuant to § 15-2-301, MCA. Among other things, he contended on appeal that the County Board had not addressed the issue that he raised, which was whether the DOR's increase in the appraised value of his property was correct.

At the first hearing before the STAB, which was held on August 5, 1986, DeVoe testified on his own behalf, and Jim Fairbanks, who is employed by the DOR as an appraisal assessment administrator in Missoula County, testified on behalf of the DOR. No other witnesses were called.

DeVoe contended through his testimony that the 1986 appraisal did not reflect true market value of his property, based on testimony given by witnesses from the DOR during appeals that resulted from his previous appraisals.

Fairbanks testified that for the appraisal cycle beginning in 1986, the DOR used a target year of 1982 for the class of property to which DeVoe's property belonged. He did not specifically discuss the method of appraisal that he employed. However, he offered two exhibits (one pertaining to each property) which he said supported the values he had arrived at.

Exhibit A, which pertained to Property No. 1, compared the cost per square foot that Fairbanks had arrived at for DeVoe's property with appraised values that he or the DOR had arrived at

4

for four other properties which he contended were similar. It also listed four additional properties which he contended were similar, and the cost per square foot at which those properties had sold. For Property No. 2, Fairbanks submitted an exhibit which listed appraisals of three properties he considered similar, and sales of 12 other properties.

On cross-examination by DeVoe, Fairbanks was asked whether he had any records which would document the sale prices of any of the pieces of property listed on the two exhibits he had offered. Fairbanks answered that he had nothing to document the comparable sale values he had relied on, other than his own list of values included in the exhibits. He explained that he had gotten the information about the sales from appraisers, realtors, and principals involved in the sales, but that he had no written documentation of those values.

Based on further questioning, Fairbanks then explained that a lot of the information pertaining to sales was available on realty transfer certificates (RTCs) but that those could neither be disclosed to the STAB nor to DeVoe because they were confidential pursuant to § 15-7-308, MCA. Realty transfer certificates are documents which indicate the consideration paid when real estate is transferred and which must be filed with the county clerk and recorder, along with any instrument or deed evidencing the transfer of real estate. The form of the RTC is established by the DOR, and after filing, the clerk and recorder is required by statute to provide each certificate to the DOR. Section 15-7-305, MCA. They

5

have been required since 1975. Their purpose is to provide sales data to the DOR to further its interest in uniformity of real estate assessments and give a reliable indication of market value. Section 15-7-302, MCA.

DeVoe objected to Fairbanks' testimony about the value for which other properties had been sold on the grounds that it was hearsay and that without production of the RTCs pertaining to each of those properties, DeVoe could not confirm the accuracy of Fairbanks' testimony.

At the conclusion of his testimony at the first STAB hearing, when addressing the reliability of his statements regarding comparable sales, Fairbanks testified that:

> The sales are authenticated much the same way any appraiser goes out and determines that the sales did, indeed, take place. We know, of course, from deed transfers that the date is accurate and the principals are accurate . . . and through realty transfers about the value that they put on the property . . . . Often that is not always the same and we must confirm before any of that is before this board.

Fairbanks left no doubt that, not only did the DOR depend on RTCs to document the value for which comparable properties had exchanged hands, but that the RTCs were absolutely necessary for that purpose in order to avoid inaccuracy.

On October 15, 1986, the STAB issued its opinion and order in which it concluded that DeVoe had failed to prove that the County Board's decision was erroneous, and therefore, had failed to sustain his burden on appeal. For that reason, his appeal was denied. No other findings or conclusions were provided.

6

DeVoe petitioned the District Court in Missoula County to review the STAB's decision pursuant to § 15-2-303, MCA. On appeal, DeVoe contended that the STAB decision was clearly erroneous and that he was denied a fair hearing when he was not permitted to confirm the accuracy of the DOR's comparable sales evidence by examining the RTCs which pertained to those sales. In this first appeal, the DOR responded that it had relied on the cost of construction method of appraisal which, in itself, was sufficient evidence to sustain the STAB decision, and that DeVoe did not have a right to examine the RTCs because they were not, in fact, relied on by the DOR to arrive at the consideration paid for comparable sales.

On July 22, 1988, the District Court held that DeVoe was not entitled to examine the RTCs pursuant to our decision in *O'Neill v. Department of Revenue* (1987), 227 Mont. 226, 739 P.2d 456, because in that case the DOR had actually relied on RTCs to establish the value of comparable sales, whereas in this case, they had not. Since the District Court concluded that the DOR could rely on evidence of comparable sales without producing copies of the RTCs pertaining to those sales, it concluded that there was sufficient evidence to support the decision of the STAB.

Subsequent to the District Court's decision, on August 9, 1988, we decided *DeVoe v. Department of Revenue* (1988), 233 Mont. 190, 759 P.2d 991, involving the same parties now before the Court. In that case, we held that the DOR did have an obligation to produce the

7

RTC information pertaining to the comparable sales on which it relied when it appraised DeVoe's property. Based on that decision, DeVoe moved the District Court, with John S. Henson presiding, to alter or amend its previous order. The District Court granted DeVoe's motion pursuant to Rule 59(g), M.R.Civ.P., and held that without production of the RTCs in question there was not substantial evidence sufficient to sustain the decision of the STAB. The District Court ordered the DOR to disclose to DeVoe the relevant RTCs and remanded this case to the STAB for consideration of whatever RTCs were produced, and to consider whether they formed an appropriate basis for the valuation of DeVoe's property. The District Court also ordered the STAB to make specific findings of fact regarding the applicability of each RTC which it considered, and to make other specific findings of fact and conclusions of law which were necessary to support its decision.

The second hearing was held before the STAB on July 22, 1991. At that hearing, DeVoe pointed out that nine RTCs were produced by the DOR and that only one of them actually pertained to those properties listed by the DOR as comparable sales.

At the second hearing, DeVoe also called Robert Lovegrove, a licensed real estate broker in Missoula, as a witness. He testified that for 13 years he had conducted appraisals of commercial properties in Missoula. He also taught real estate courses offered through the Business School at the University of Montana.

8

Lovegrove reviewed the RTCs provided by the DOR and agreed that six out of the nine dealt with four- or eight-plex apartment units. He testified that those were not a valid basis for appraising large apartment complexes like the properties which were the subject of DeVoe's appeal. He also testified that he had reviewed all of the properties listed on the RTCs, except for one transaction which involved the sale of three four-plexes. Based on his review, it was his opinion that they did not provide a basis for comparison to DeVoe's property.

Lovegrove also testified that in 1982 (the year in which DeVoe's property was appraised for the 1986 cycle) Missoula was in a significant recession and property values were not increasing from what they had been in the 1970s. He testified that they had leveled off and begun to decline. Specifically, he testified that the market for large multi-family complexes (like those owned by DeVoe), as opposed to four unit or eight unit buildings, was nonexistent, that no transfers had even occurred during the time frame of the DOR's appraisal, and that was why no comparable sales had been relied on.

Jim Fairbanks was again called as the DOR's only witness at the second STAB hearing. He testified that the previous appraisal cycle for DeVoe's property began in 1978 and ended in 1986, and that the current cycle, which was the subject of DeVoe's appeal, began in 1986 and would end in 1993. The base year for appraising the property for the cycle beginning in 1978 was 1972. The base year for the cycle beginning in 1986 was 1982.

9

Fairbanks described three approaches to valuation of real estate. They included the cost approach, the market data approach, and the income approach. He testified, for the first time, that in appraising DeVoe's property he used the cost approach and then used the market data approach to check the validity of his appraisal. He explained that the cost approach measures the cost of replacing the property and then allows a deduction from that value for wear, tear, and depreciation.

Fairbanks testified that he had been unable to find RTCs for all of the properties he had originally listed as comparable sales. However, he then explained that he had not relied on RTCs when he put together the list of comparable sales in the first place. He testified that he came by that information from others during the normal course of his appraisal activities. He also acknowledged that there were no sales of larger multi-family units, such as those owned by DeVoe, during the early 1980s when he prepared his appraisal of DeVoe's property.

The second STAB decision was entered on August 7, 1991. The extent of its findings and conclusions entered pursuant to the District Court's order on remand were as follows:

### FINDINGS OF FACT

1.   RTCs identified as 1-4, 2-10, 3-11, 4-12, 5-13, 6-21, 7-24, 8-24, and 9-28A were received in evidence.

2.   The taxpayer presented evidence to show that the RTCs in question were not sufficiently similar properties to use as a comparable basis for valuing the taxpayer's property.

10

3.     The DOR presented evidence to show that the RTCs were used only as a cross-check of the values it had already placed on the subject property and were not used in any way to form a basis for valuing the subject property.

4.     The RTCs referred to above were not used to form a basis for valuation of the taxpayer's property and for that reason are irrelevant to the issue of valuation.

## CONCLUSIONS OF LAW

1.     The Board will not rely on any of the RTCs referred to above as evidence of the valuation of the subject property.

2.     The previous determination of the Board as to the value of the subject property remains unchanged.

On October 7, 1991, DeVoe filed a second petition for review in the District Court for Missoula County. This time his petition was assigned to the Honorable Ed McLean. He alleged that the STAB had rendered a final decision denying his appeal of the appraised valuation of his properties, and that therefore, he had exhausted his administrative remedy for all of the years included in the appraisal cycle to which those valuations applied. He also alleged that the appraised valuation had not changed during any year since his original appeal, which was brought in 1986.

In his petition for review, DeVoe also alleged that he had filed appeals to the Missoula County Board and the STAB from the appraised values of these same properties for the years subsequent to 1986, but that both boards refused to render a decision following those appeals based on administrative rules which provide that final decisions of the STAB are binding on subsequent years during which the same valuations are applicable unless altered by

11

judicial review, change in use of the property, or reevaluation by the DOR.

Finally, DeVoe contended on appeal that because the first STAB decision was reversed and remanded based on insufficiency of the DOR's evidence, and because no additional relevant evidence was offered by the DOR, that neither is the second STAB decision based on credible evidence. He contended that the DOR value was contrary to the requirements of § 15-8-111, MCA, and asked the District Court to reverse the STAB's final decision and reinstate an appraised value for his properties equal to the value prior to the DOR's 1986 reappraisal. He also asked, pursuant to § 15-1-402, MCA, for an order directing the county treasurer to refund those excess taxes which he had paid under protest.

The DOR filed a motion to dismiss DeVoe's petition on the grounds that it was untimely, but did not otherwise respond by pleading to the allegations of his petition.

On June 25, 1992, the District Court entered its opinion, order, and judgment reversing the second decision of the STAB, granting the relief sought by the petitioner, and in addition, awarding DeVoe his attorney fees incurred through this extended appeal process.

The District Court observed that even though the STAB concluded that the RTCs which were ultimately produced were irrelevant to the issue of valuation and could not be relied on as evidence, it did not hear any additional credible evidence to

12

support its original decision, but instead summarily concluded that its original October 15, 1986, decision was correct.

The District Court concluded that Judge Henson's original order correctly concluded that the STAB's original decision was not supported by substantial credible evidence, and that since no additional evidence was provided during the remand hearing, the STAB's decision was clearly erroneous pursuant to § 2-4-704(2)(a)(v) and (vi), MCA. The court concluded that no evidence of multi-family apartment complexes similar to DeVoe's were produced during the relevant time period, and that the comparable sales evidence which was offered involved properties which were not really comparable.

In light of the testimony by Robert Lovegrove that large multi-family apartment complexes had not increased in value from the late 1970s to the early 1980s when this appraisal was done, and in the absence of credible evidence to the contrary, the District Court concluded that DeVoe had met his burden of proving that the increased valuation of his property was not based on substantial evidence.

Based on these findings and conclusions, the District Court reversed the decision of the STAB and ordered that the valuation of DeVoe's property which was in effect prior to 1986 be continued to the present date.

The District Court further held that this result was justified by the STAB's failure to issue specific findings of fact and

13

conclusions of law which it had been directed to issue by Judge Henson's original order.

Finally, the District Court expressed concern over the DOR's inconsistent positions regarding the use of RTCs. It cited the DOR's original argument that they were confidential and not available; its subsequent production of nine RTCs, most of which were irrelevant; and its final position that RTCs are a nonissue because they were not relied on when the property was originally valued. Based on what the court perceived to be the inconsistency of the DOR's conduct and the protracted nature of these proceedings which it concluded resulted from that conduct, the court concluded that DeVoe was entitled to an award of costs and attorney fees.

In summary, the DOR's reappraisal was reversed; it was ordered to reinstate the value of DeVoe's property as it had been prior to 1986; the Missoula County Treasurer was ordered to refund taxes paid by DeVoe for all years included in that appraisal cycle to the present time; and the DOR was ordered to pay costs and attorney fees to DeVoe which were incurred during the series of appeals from the DOR's appraisal.

I.

Did the District Court err when it ordered the DOR to assess the value of DeVoe's property for the appraisal cycle beginning in 1986 based on its assessed value prior to that date?

The DOR's first contention on appeal is actually two-fold. First, it contends that the District Court's scope of review of the STAB decision was limited pursuant to § 2-4-704, MCA, to a

14

determination of whether the STAB's decision was clearly erroneous, and that the District Court may not substitute its judgment for that of the STAB. Second, the DOR contends that even if the STAB's decision was clearly erroneous, the District Court erred by independently determining the correct valuation for DeVoe's properties because according to our prior decisions, the STAB is uniquely qualified to perform that fact-finding function.

In support of its contention that the District Court exceeded its proper scope of review when it reversed the decision of the STAB, the DOR contends that it offered substantial credible evidence of the value of DeVoe's property pursuant to the cost of replacement method, and that since that method of appraisal is specifically authorized by § 15-8-111(2)(b), MCA, the STAB's decision based on that evidence was not clearly erroneous.

Before we discuss the merits of the DOR's argument, we make the following observation regarding the District Court's scope of review pursuant to § 2-4-704, MCA. That section provides in relevant part that:

> (2) . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>
> . . . .
>
> (b) findings of fact, upon issues essential to the decision, were not made although requested.

In this case, the District Court's reversal of the STAB was justified on the basis of this provision alone. When he first remanded this case to the STAB, Judge Henson instructed the STAB to

15

make specific findings of fact which supported its decision. However, other than those findings which related to realty transfer certificates, the STAB made no findings which supported its decision. After six and one-half years of litigation and still no satisfactory explanation for the STAB's decision, the District Court was fully justified when it concluded that substantial rights of the taxpayer were prejudiced because of the STAB's refusal to support its decision factually.

With regard to the DOR's argument that evidence of cost alone was sufficient to support its appraisal, we note that § 15-8-111(1), MCA, establishes the basis upon which all property must be assessed in Montana. It provides that:

(1) All taxable property must be assessed at 100% of its market value except as otherwise provided.

(2)(a) Market value is the value at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

It is true that the very next paragraph found at § 15-8-111(2)(b), MCA, states that the DOR may use "construction costs as one approximation of market value." However, we hold that evidence of construction costs alone, without consideration of any market factors, does not satisfy the requirement of § 15-8-111(1), MCA, that the assessed value equal market value. To the extent that this holding is inconsistent with our decision in *Northwest Land v. State Tax Appeal Board* (1983), 203 Mont. 313, 661 P.2d 44, that decision is overruled.

16

Market value depends on the price that a willing buyer would pay a willing seller, taking into consideration relevant facts. Presumably, relevant facts would include the market and economic conditions prevailing at the time of sale.

Logic tells us that there may not be a buyer willing to purchase every 30-unit apartment complex that contractors in Missoula can build at the cost for which they are constructed. If there was, there would be no reason to ever end construction of new apartment houses.

We further hold that when market data is relied on by the DOR to establish assessed value of real property in Montana, and when the taxpayer whose property is being assessed appeals that assessment and requests copies of the RTCs pertaining to the properties that are being compared, they must be produced according to the procedures set forth in our decision in *O'Neill*, whether or not they were the source from which the DOR arrived at the values of comparable sales. These documents were created by statute to provide sales price data which would promote uniformity of real estate assessments in an efficient, economic, and reliable manner. The DOR is required by statute to retain the RTCs as records. Because they are the most uniform and efficient way for the DOR to establish market value, they are also the most effective and efficient way for the taxpayer to verify the values relied on by the DOR. There is no other practical way for the taxpayer to verify information informally gathered by the appraiser during the normal course of his duties. Therefore, we conclude that fairness

17

and procedural due process require that where market value is established by the DOR based on sales of comparable property, and because the DOR is required by statute to keep a specific record of the consideration for which real property changes hands in Montana, this information should be provided to a taxpayer who appeals the appraised value of his or her property.

In this case, the STAB concluded that the RTCs provided by the DOR to DeVoe were irrelevant to his appraisal, and for the most part, did not pertain to those comparable sales on which it relied to corroborate the appraisal it arrived at through the cost approach. Furthermore, no other evidence of market value was offered by the DOR to rebut the testimony offered by DeVoe to the effect that his property had not increased in value, but had probably declined in value since the previous appraisal cycle. Therefore, we affirm the District Court's conclusion that there was not substantial evidence to support the STAB's decision and that it was, therefore, clearly erroneous.

As the second part of its first argument, the DOR contends, relying on our prior decisions in *Department of Revenue v. Paxson* (1983), 205 Mont. 194, 666 P.2d 768, and *Department of Revenue v. Grouse Mountain Development* (1985), 218 Mont. 353, 707 P.2d 1113, that the District Court exceeded its authority when it arrived at the proper valuation of DeVoe's properties, instead of remanding his appeal to the STAB for that purpose. However, the facts in this case are distinguishable from the facts in the cases relied on by the DOR.

In both *Paxson* and *Grouse Mountain*, we found fault with district courts which assumed the fact-finding function by resolving factual issues related to taxable valuation. In this case, the District Court did not impose its own opinion regarding taxable valuation. The District Court held that, as a matter of law, the DOR presented no credible evidence to justify increasing the appraised value of DeVoe's property by an amount in excess of 100 percent from one appraisal cycle to the next. The District Court held that neither did the DOR offer evidence that the appraised value of DeVoe's property should be increased at any other rate, and therefore, that the appraised value should remain at the amount previously established by the DOR based on its own appraisal.

The approach taken by the District Court is similar to the approach adopted by this Court in *Department of Revenue v. Barron* (1990), 245 Mont. 100, 115, 799 P.2d 533, 542, where we held that:

> (3) The valuation for tax year 1990 of the residential property of Patricia C. Barron in Area 2.1 established by STAB should be and is hereby reversed, and STAB and all agents of the DOR shall fix the appraised value of said residential property of Patricia C. Barron at the valuation which was obtained in the tax year 1989.

We conclude that the District Court did not err when it ordered the DOR to establish the appraised value of DeVoe's property in the amount at which it had been appraised by the DOR prior to 1986.

19

## II.

Did the District Court err when it ordered the DOR to apply the assessed value of DeVoe's property for 1986 to subsequent years during the same appraisal cycle?

The DOR contends that because this appeal, which began in 1986 and was finally resolved in 1991, dealt only with the appraised value of DeVoe's property for that year, that the District Court should not have considered subsequent years during the same appraisal cycle because DeVoe had not fully exhausted his administrative remedies by appeals to the County Board, then to the STAB, then to the District Court for each subsequent year. The DOR relies on our decision in *DeVoe v. Missoula County* (1987), 226 Mont. 372, 735 P.2d 1115, for the principle that administrative remedies had to be exhausted for each year during which taxes were paid under protest.

DeVoe, however, in the petition which gave rise to the second District Court decision, alleged that he had attempted to appeal assessments for years subsequent to 1986 to the County Board and to the STAB, but that those boards would not consider his appeals because of an administrative rule which made the STAB's decision affirming the DOR's appraisal binding for the remaining years of the appraisal cycle. The DOR did not deny this allegation.

We conclude that the prior decision relied on by the DOR is distinguishable on its facts, and that based on the DOR's administrative rule 2.51.403(2), ARM, the District Court's conclusion was correct as a matter of law.

20

In the earlier *DeVoe* decision, the taxpayer had filed a complaint in the District Court challenging the appraisal of his real property for the year 1985, even though he had not administratively appealed the appraisal of his property for that year. We held that because the complaint did not allege that he had exhausted his administrative appeals, the complaint was inadequate on its face. However, in this case, DeVoe alleged that he had paid taxes under protest for 1986 and each year subsequent thereto, and that his taxes during each year were based on the same appraised valuation which was the subject of his original administrative appeal begun in 1986.

He also alleged that he had filed appeals during subsequent years, but that subsequent to their original decisions, both the County Board and the STAB refused to render a decision in those appeals pursuant to the DOR's administrative rules which provide that final decisions of the STAB are binding on all interested parties for subsequent years during which the same valuations are applicable.

The administrative rule referred to in DeVoe's petition for review is 2.51.403(2), ARM, which provides as follows:

> With respect to taxable real property and improvements thereon, the decision of the state tax appeal board shall be final and binding unless reversed or modified by the district court upon judicial review. If the decision of the state tax appeal board is not reviewed by a district court, it is final and binding for subsequent tax years unless there is a change in the property itself or other circumstances surrounding the property which affect its value. Statutory reappraisal by the department of revenue pursuant to 15-7-111, MCA,

21

is a circumstance affecting the value of real property and improvements thereon.

In this case, the District Court reversed the STAB's decision and ordered the DOR to reinstate the appraised value that it had arrived at prior to the appraisal cycle which began in 1986. That, then, became the appraised value of DeVoe's properties for 1986, and according to the DOR's own administrative rules, was binding on subsequent years during the same appraisal cycle. The only exceptions were for a change in the property itself which affected its value, or reappraisal by the DOR. However, there was no indication in the record that anything changed about the nature of the property which would have affected its value. The DOR did not deny that the same appraised values applied for each year in question subsequent to 1986, and the DOR's appraiser, Jim Fairbanks, testified that there would be no reappraisal of DeVoe's property until 1993.

Therefore, in this case, DeVoe attempted to exhaust his administrative appeals but was unable to do so based upon the DOR's administrative rule which precluded appeals during the same appraisal cycle. Furthermore, pursuant to that same rule, the appraised value which the DOR was ordered to reinstate by the District Court was applicable to the subsequent years in question, and therefore, applied as a matter of law as a result of the District Court's decision which we have affirmed. To require DeVoe to exhaust more administrative remedies than he has already

22

exhausted would be a useless act, and neither law nor equity require useless acts.

We affirm the District Court's application of the 1986 appraisals of DeVoe's property to subsequent years during the same appraisal cycle.

III.

Did the District Court err when it ordered the Missoula County Treasurer to provide DeVoe with a refund for 1986 and subsequent years during the same appraisal cycle?

The DOR contends that neither the County Treasurer nor the County was served with a copy of DeVoe's second petition, and therefore, pursuant to § 15-1-402, MCA, the District Court had no authority to order the County to refund taxes to DeVoe.

DeVoe contends that the County was given notice of his petition for review when it was served with his first petition and that the ultimate decision of the District Court ordering repayment of taxes paid under protest was simply a result of the same appeal process begun in 1986. DeVoe contends that if there was a requirement of notice to the County, it was satisfied when the County was served with his first petition.

Section 15-1-402, MCA, does not require notice to the county or the county treasurer when an appeal is filed pursuant to § 15-2-303, MCA. It requires that a taxpayer who pays taxes under protest must specify to the county treasurer the specific grounds for the protest when the taxes are paid and before the taxes are

23

due. That statute then provides, at § 15-1-402(6)(b), MCA, as follows:

> If the action is finally determined adversely to the department of revenue, a county, a municipality, or the treasurer of the county or a municipality, then the treasurer shall, upon receiving a certified copy of the final judgment in the action from the state tax appeal board or from the district or supreme court, as appropriate, if the final action of the state tax appeal board is appealed in the time prescribed, refund to the person in whose favor the judgment is rendered the amount of the protested portions of the property tax or fee deposited in the protest fund, and not released pursuant to subsection (5), as the person holding the judgment is entitled to recover, together with interest from the date of payment under protest . . . .

The only reference in the appeal statutes to notice to the treasurer or the county is found at § 15-2-303(3), MCA, which provides as follows:

> If the judicial review involves a taxpayer who is seeking a refund of taxes paid under protest, the appealing party shall provide a copy of the petition to the treasurer of the county in which the taxable property or some portion of it is located, but failure to do so has no effect on the judicial review.

The plain language of the only statute which required DeVoe to provide the County or its Treasurer with notice, provides that lack of notice is not fatal to the relief sought on review.

Therefore, we conclude that even if a second notice to the County was required, DeVoe's failure to provide that notice did not legally deprive him of the right to a refund of those taxes he paid under protest pursuant to § 15-1-402, MCA.

IV.

Did the District Court err when it awarded attorney fees to DeVoe?

24

As part of its decision, the District Court concluded that the DOR had acted in bad faith by taking inconsistent positions with regard to the relevance of RTCs, and therefore, that DeVoe was entitled to recover his attorney fees pursuant to § 25-10-711, MCA. That section allows the court to award attorney fees to a successful person in any action against the State if he or she prevails and the court finds that the State's defense or claim was frivolous or pursued in bad faith.

The DOR contends that by awarding attorney fees the District Court exceeded the issues framed by the parties because DeVoe neither requested attorney fees in his petition nor in any of the written briefs filed with the District Court. Furthermore, the DOR argues that its position could not have been in bad faith when it was upheld by the Missoula County Tax Appeal Board, by the STAB on two separate occasions, and on one occasion by the District Court. The District Court, acting through Judge Henson, only changed its position based upon this Court's decision in *DeVoe v. Department of Revenue*, 759 P.2d at 991, which was decided subsequent to the District Court's original decision.

DeVoe responds that attorney fees under the circumstances in this case are specifically authorized by § 25-10-711, MCA, and were appropriate based upon the DOR's inconsistent legal and factual arguments. He also contends that the District Court was authorized to impose an award of attorney fees under its equitable power when justice so requires.

25

We have reviewed the record on appeal and understand the District Court's frustration with the DOR over what appear to be inconsistent positions at various stages of this appeal, and the incredible delay which has occurred as a result of these seemingly contradictory positions. We also agree that when attorney fees are sought in tax appeals, and the necessary facts are established, they may be awarded pursuant to § 25-10-711, MCA. However, we conclude that when relief that is as substantial as the attorney fees which are at issue in this case is sought by a party to litigation, the other party is entitled to prior notice that such relief is being sought and an opportunity to address the merits of granting such relief. Therefore, based on DeVoe's failure to notify the DOR that he, in fact, sought an award of attorney fees in either his petition or his arguments to the District Court, and based upon the DOR's lack of opportunity to address the issue of attorney fees prior to the time they were awarded, we reverse that part of the District Court's judgment.

We reverse the District Court's award of attorney fees, and otherwise affirm the order, findings, and judgment of the District Court in all respects. This case is remanded to the District Court for entry of judgment consistent with this opinion.

_____
Justice

26

We concur:

_____
John Conway Harrison

_____
William E. Hunt Sr.

_____
                Justices

_____
District Court Judge Thomas C. Honzel,
sitting for Chief Justice J. A. Turnage

27

Justice Karla M. Gray, specially concurring.

I specially concur in the result reached by the Court on issue one.

I would affirm the District Court on that issue based on § 2-4-704(2)(b), MCA, which allows the reviewing court to reverse a decision of STAB if substantial rights of an appellant have been prejudiced because findings of fact, on issues essential to the decision, were not made, although requested. Here, two hearings were held by STAB. On judicial review after the first hearing, the District Court directed STAB to hold another hearing and, thereafter, to make specific findings of fact and conclusions of law in support of its decision. STAB totally failed to comply with the directive from the court to make specific findings. As a result, DeVoe has been in litigation for more than six years over one tax challenge.

It would be unfair and inequitable to DeVoe to permit this case to drag on any longer because of STAB's neglect of its duty. Nor should this Court countenance such responses---or failures to respond---to district court orders by any agency or arm of state government, particularly when the adverse impacts would fall on individual Montana taxpayers. Indeed, the conduct of both STAB and the DOR in this case falls far short of the performance Montanans are entitled to expect from their government. I conclude that DeVoe's substantial rights have been prejudiced because of STAB's failure to follow the court's order and would affirm the District Court on that basis.

28

I also agree with the Court that the District Court correctly determined that the DOR did not produce substantial credible evidence in support of its appraisal, even though I disagree with the Court's rationale in reaching that conclusion. Here, the DOR contends that it assessed DeVoe's property using the cost approach outlined in § 15-8-111(2)(b), MCA. Its assessment included a physical depreciation factor, although no testimony explained or supported the amount of physical depreciation included in that assessment. More importantly, the record does not contain evidence that the DOR considered functional and economic obsolescence in assessing the property at issue, much less that it "fully considered" those factors as required by § 15-8-111(2)(b), MCA. I conclude that the failure to present evidence that those factors were fully considered requires affirming the District Court on the basis that substantial credible evidence does not support the DOR's assessment or STAB's decision upholding that assessment against DeVoe's challenge. Because the DOR did not comply with the requirements of § 15-8-111(2)(b), MCA, in assessing DeVoe's property, I do not believe it is necessary to reach the question of whether the cost approach can be utilized without regard to "market factors."

Because the Court does so, however, I must state my disagreement with its conclusion that the cost approach---even assuming all statutory requirements are met---is an insufficient method of assessing property. It is my view that § 15-8-111(2)(b), MCA, does authorize the DOR to use the cost approach on a stand-

alone basis in assessing property. To me, enactment of that subsection reflects legislative recognition and approval of the DOR's long-standing use of the cost approach to market value, while requiring the purely cost approach to be "softened" by reductions in value caused by physical depreciation and functional and economic obsolescence.

Moreover, I am concerned with the Court's departure from the wisdom of Northwest Land, where we stated that "[i]t is not a judicial function to act as an authority on taxation matters. We will not evaluate the advantages and disadvantages of a particular assessment method as applied to a taxpayer." 661 P.2d at 45. The Court concludes that the cost approach as defined by § 15-8-111(2)(b), MCA, does not provide a sufficient basis for property assessments by the DOR. It does not, however, provide any guidance as to how the DOR can properly assess property when faced with circumstances like those in the present case.

As the record before us reflects, the other common valuation methods for properties of the kind at issue here are the income approach and the comparable sales approach. Here, no income approach information is of record; indeed, DeVoe's own "expert" did not have the information necessary to make an assessment on that basis. Such information generally would be in the hands of the taxpayer and unavailable to the DOR absent voluntary submission of that data by the taxpayer. In addition, the "comparable sales" evidence offered by the DOR in this case was properly rejected as dissimilar and irrelevant by both STAB and the District Court; the

30

record is clear that no truly comparable sales occurred during the applicable time period. I am at a loss to understand how, under these circumstances, the DOR is to meet its duties in periodically assessing property if it cannot rely solely on the cost approach which is, in my view, specifically sanctioned by statute.

Notwithstanding my differences with the Court, however, I do agree that the District Court did not err in reversing STAB on the basis of § 2-4-704(2)(b), MCA, and the lack of substantial credible evidence to support the DOR's assessment. Thus, I would affirm on those bases.

_____
Justice

Justice Fred J. Weber joins in the foregoing special concurrence of Justice Karla M. Gray.

_____
Justice

31

December 28, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DAVID L. NIELSEN, Tax Counsel
Montana Department of Revenue
Office of Legal Affairs
Mitchell Bldg.
Helena, MT  59620-

Michael W. Sehestedt
Deputy County Attorney
Missoula County Courthouse
Missoula, MT  59802

GEORGE C. DeVOE
Attorney at Law
310 Higgins Ave.
Missoula, MT  59802


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy