CHIEF JUSTICE GRAY
dissenting.
¶45 I respectfully dissent from the Court’s conclusions that Trout Unlimited need not exhaust any administrative remedies before seeking judicial relief and that the District Court erred as a matter of law in concluding otherwise. In my view, the Court’s decision rests on a simple misreading of the plain language of the primary statutes at issue here. As a consequence, I also dissent from the Court’s resolution of the substantive matter presented in the second issue, which I believe must await another day.
¶46 I agree with the Court that, if a statute provides for administrative relief, an aggrieved party must seek that relief from the administrative body and exhaust the statutory remedy before seeking judicial relief. I also agree with the Court that statutory remedies exist for challenging applications for permits for ground water, and that objections to such applications are subject to contested case proceedings by means of which the objections can be addressed; ultimately, an aggrieved party-that is, a party who is actually aggrieved because objections have not been successful-may seek judicial review of a final agency decision. I would apply these statutes to the present case. I also would address-and reject-application of the futility doctrine here.
¶47 In the present case, Trout Unlimited argues that it should not be subjected to the rules, statutes and procedures which govern challenges to-and remedies for challenges to-groundwater applications. It maintains that it should prevail, without seeking administrative remedies, by a mere plain language interpretation of the Basin Closure Law (BCL). The Court agrees, based on the language contained in § 85-2-343(1), MCA-part of the BCL-that the DNRC cannot "process ... an application for a permit to appropriate water” in the Upper Missouri River Basin until a final decree is issued. I most certainly do not agree.
*497 ¶48 It is important to start with a clear understanding of the statutes at issue here, which are part of the BCL. In that regard, § 85-2-342(1), MCA, defines the term “[gjround water” as “water that is beneath the land surface or beneath the bed of a ... body of surface water and that is not immediately or directly connected to surface water.” (Emphasis added.)
¶49 Section 85-2-343(1), MCA, the substantive statute regarding the Upper Missouri River Basin closure, provides in pertinent part that “subject to the provisions of subsection (2) of this section, the department may not process or grant an application for a permit to appropriate water” within the Basin. Subsection (2)(a) of § 85-2-343, MCA, states that “[t]he provisions of subsection (1) do not apply to ... an application for a permit to appropriate ground wateri.T (Emphasis added.) The plain and simple language of this statute, therefore, means that the prohibition against processing applications for water permits contained in subsection (1) has no application to an application for a permit to appropriate ground water. In my view, this plain language necessitates a conclusion that the DNRC can “process” an application for a permit to appropriate ground water. Statutes are not always clear, but these are crystal clear.
¶50 The Court’s interpretation of the statutes simply overlooks the language in § 85-2-343(1), MCA, that, notwithstanding the prohibition against DNRC’s processing and granting an application for a permit to appropriate water in the Upper Missouri River Basin, the subsection is “subject to the provisions of subsection (2) of this section[.]” More importantly, the Court totally ignores that portion of § 85-2-343(2)(a), MCA, that the “provisions of subsection (1) do not apply to an application for a permit to appropriate ground water[.]” (Emphasis added.)
¶51 Thus, faced with an application for a permit to appropriate ground water, the DNRC is obligated to begin processing it. If there are objections to the application-based on whether the water sought is actually “ground water,” or on any other basis-the DNRC must follow the procedures set forth in §§ 85-2-307, -308 and -309, MCA, the very statutes which the Court concedes provide a statutory remedy for challenges to such an, application; respectively, those statutes require notice of the application, acceptance of timely filed objections and, under delineated circumstances, a contested case hearing. Judicial review is available for a party aggrieved by the DNRC’s final decision. See § 2-4-702(l)(a), MCA.
¶52 Trout Unlimited seeks to avoid exhausting these procedures on the grounds that resort to an administrative remedy would be futile. *498 The Court agrees, relying on DeVoe v. Department of Revenue (1993), 263 Mont. 100, 866 P.2d 228 (DeVoe II) only after spinning out several speculative scenarios which might cause an application to be denied for other reasons. I submit that one could always raise specters-via speculation-that would prevent a party in a contested case from prevailing or from having their particular issue fully addressed. I further submit that this kind of rationale-accepted by the Court here-likely will mark the beginning of the end of administrative processes, remedies and judicial review as they have existed in Montana for many years. Thus, I turn to the Court’s reliance on DeVoe II, which is decidedly misplaced.
¶53 The DeVoe litigation actually began with challenges by DeVoe to DOR’s assessment of his commercial apartment properties in 1980, 1981, 1982, 1983 and 1984. Unsuccessful at the county tax appeal board in virtually all regards, DeVoe appealed to the state tax appeal board, which consolidated the cases for all years and upheld the county board’s decisions. DeVoe sought judicial review in the district court, which upheld the state board with one exception; the court remanded the 1983 tax year to the state board. DeVoe appealed to this Court, which reversed the district court and directed it to remand to the state board. DeVoe v. Department of Revenue (1988), 233 Mont. 190, 759 P.2d 991 (DeVoe I).
¶54 In the present case, the Court relies on DeVoe II. There, the appraised value of DeVoe’s two properties more than doubled in 1986 from the 1985 appraisals. DeVoe appealed the changes to the county tax appeal board which, in a one-sentence decision, denied the appeals based on taxable valuation. The county board did not mention the assessed valuations, which were the subject of DeVoe’s appeals. He appealed to the state tax appeal board, which denied his appeal for failure to sustain his burden of establishing error in 1986. DeVoe then sought judicial review in the district court and the court upheld the state board’s decision. Shortly thereafter, we issued our decision in DeVoe I and, in light thereof, DeVoe moved for an amended judgment; the district court reversed itself and remanded to the state board. The second state board decision was issued in August of 1991 and, again, was adverse to DeVoe who then again sought judicial review. He contended that the state board’s decision denying his appeal of the appraised valuations constituted exhaustion of his administrative remedy for all of the years included in the appraisal cycle to which those valuations applied. The district court agreed, since DeVoe had attempted to appeal the assessments for the years after 1986 to the county board and the state board, but those entities would not consider *499 his appeals based on an administrative rule which made the DOR’s appraisal binding for the remaining years of the appraisal. On appeal to this Court, and against such a nightmarish backdrop, we determined that DeVoe had attempted to exhaust his administrative appeals but was unable to do so. “To require DeVoe to exhaust more administrative remedies than he has already exhausted would be a useless act, and neither law nor equity require useless acts.” DeVoe II, 263 Mont. at 115, 866 P.2d at 238.
¶55 It is unnecessary to point out at length that the facts and circumstances in DeVoe II bear no resemblance whatsoever to the facts of the present case for purposes of applying, as the Court does, the futility doctrine here. DeVoe had sought administrative remedies for a decade. Trout Unlimited has sought none. Indeed, the Court does not really contend otherwise. It rests its decision regarding futility on the statement that Trout Unlimited and other objectors should not be required to participate in agency proceedings “that the legislature expressly prohibits.” As discussed above, the Legislature has not expressly prohibited the proceedings at hand. Having pointed out the errors in the Court’s statutory interpretation, it would be futile to do so again here. I cannot understand the Court’s willingness to allow Trout Unlimited to avoid the very statutory proceedings and remedies we all agree exist. If Trout Unlimited can do so, why should anyone-or any entity-have to comply with legislative mandates in the administrative arena or at all?
¶56 There is, in my view, an intermediate position regarding the extent to which Trout Unlimited-and others-must adhere to the generally applicable administrative procedures and remedies enacted by the Legislature. While it has not been raised, I offer it as another basis for avoiding the Court’s overly broad decision that application of the futility doctrine is appropriate here.
¶57 Section 35-2-309(1), MCA, provides that if the DNRC determines that an objection to an application for a permit is a valid objection, the DNRC must hold a contested case hearing. That a hearing must be held upon a determination that an objection is a valid objection necessitates that the converse also must be true; that is, the DNRC may determine that an objection does not state a valid objection, thereby-if there is only the one obj ection-negating the requirement for a contested case. In such a circumstance, the objector has been precluded from further involvement in proceedings on the application. At that point, waiting for a final agency determination may well be futile and, if a contested case hearing were to go forward on other objections, the “aggrieved” objector would be out of the game. Under *500 such a circumstance, it is my view that § 2-4-701, MCA, would come into play. Section 2-4-701, MCA, states that a “preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.” Immediate review under such circumstances would be efficient for all concerned and would provide an adequate remedy within the boundaries of the existing statutory administrative procedures.
¶58 In summary, it is my view that the Court improperly interprets the BCL in the first instance and then bases its application of the futility doctrine on that erroneous interpretation. I cannot agree with this wholesale repudiation of the statutory procedures and remedies provided by the Legislature in the critical arena of water rights. On this record, I would affirm the District Court’s determinations that, where available, administrative remedies must be exhausted prior to bringing a declaratory judgment action and that here, summary judgment against Trout Unlimited is proper. I dissent from the Court’s failure to do so.
JUSTICE RICE joins in the foregoing dissenting Opinion of CHIEF JUSTICE GRAY.