Justice Laurie McKinnon delivered the Opinion of the Court.
*1107 ***346 ¶ 1 Four liquor store owners, Duane C. Kohoutek, Inc., Bucher Sales, LLC, Nobles, Inc., and Spirits Plus, LLC, (together Storeowners) certified as a class representing similarly situated liquor store owners, sought declaratory and injunctive relief from actions of the State of Montana, Department of Revenue (DOR) in Montana's Eighth Judicial District Court, Cascade County.
¶ 2 Various statutes govern liquor sales in Montana and are administered by DOR. The statute at issue in these proceedings was effective between 1995 and 2016. Pursuant to the statutory scheme, all liquor sales originated in the State-owned, central liquor warehouse (Liquor Warehouse). DOR then sold liquor to certified liquor stores (Agency Liquor Stores). Agency Liquor Stores could only purchase liquor from the Liquor Warehouse and the Liquor Warehouse sold only to Agency Liquor Stores. DOR provided Agency Liquor Stores with three discounts, collectively known as the commission rate, on their purchase of liquor from the Liquor Warehouse. One of those discounts was the weighted average discount ratio (WADR), codified in § 16-2-101(2)(b)(ii)(B), MCA (repealed 2016). Agency Liquor Stores then, in turn, sold the liquor to individual retail customers as well as to licensed taverns and bars (Licensees). When Agency Liquor Stores sold whole or unbroken cases of liquor, also known as case lots, to Licensees, § 16-2-201(1), MCA, required them to provide a separate ***347 discount (Case Discount).
¶ 3 In 2014, Storeowners filed suit challenging the constitutionality of the WADR. Storeowners argued they suffered economic injury because the WADR used 1994 unbroken-case-sales data to formulate its discount and apply it against their purchase price, while Storeowners' current sales data differed depending on actual Case Discounts given. Storeowners contended the WADR's effect was "capricious in paying some storeowners more in reimbursements than discounts made" and stores that sold more unbroken cases after 1994 were unable to realize as great a profit as stores that sold the same or fewer unbroken cases. Storeowners specifically claimed that the WADR should have fully reimbursed them for the cost of providing the Case Discount to Licensees. Accordingly, Storeowners argued the WADR violated their rights to substantive due process and equal protection, constituted an illegal taking, and resulted in DOR's unjust enrichment.
¶ 4 The District Court concluded that the WADR was constitutional when it was enacted in 1995, but its reliance on 1994 sales data became stale and violated Storeowners' rights to substantive due process and equal protection beginning in 1998. The District Court also concluded the WADR resulted in DOR's unjust enrichment, but did not constitute an illegal taking. Both DOR and Storeowners appeal from the District Court's decisions. We conclude the statute was constitutional and reverse the District Court's judgment.
¶ 5 We restate the dispositive issues on appeal as:
1. Whether the District Court erred in determining the WADR violated Storeowners' rights to substantive due process.
2. Whether the District Court erred in determining the WADR violated Storeowners' rights to equal protection.
FACTUAL AND PROCEDURAL BACKGROUND
Legislative History
¶ 6 After the United States Congress repealed prohibition in 1933, the State of Montana began closely regulating liquor sales within the State. U.S. Const. amend. XVIII, repealed by U.S. Const. amend. XXI. From 1933 to 1995, the State maintained a monopoly *1108 on the public's access to liquor through its ownership of the Liquor Warehouse and liquor stores throughout the State. In 1975, the Legislature provided a statutory Case Discount for the first time, requiring State liquor stores to provide a 5% discount "to any person purchasing liquor in case lots." 1975 Mont. Laws 650. Section 4-2-201, RCM (1975), specifically required the discount "shall be made by the department" so that State liquor stores providing the 5% discount on unbroken ***348 cases were fully reimbursed.
¶ 7 Between 1975 and 1995, the Legislature privatized ownership of liquor stores while retaining State ownership of the Liquor Warehouse. The ultimate purchase price of liquor from the Liquor Warehouse was the posted price less the commission rate. The commission rate included three statutory discounts: a commission rate discount, a sales volume discount, and the WADR. See §§ 16-2-101(2)(b)(ii)(B) ; 16-2-101(4)(a)(i)(A)-(B); 16-2-101(4)(a)(ii)(A)-(B), MCA (2013).[1] To complete the privatization process, House Bill 574, proposed in 1995, made a variety of changes to the Montana Alcoholic Beverage Code (Title 16, chapters 1-4, 6, MCA). Relevant here, House Bill 574 transferred references to ownership of liquor stores by replacing "state liquor stores" with "agency liquor stores," and limited the Case Discount's availability to Licensees. 1995 Mont. Laws 2715-21. The Legislature increased the Case Discount from 5% to 8% and substantially revised § 16-2-101, MCA, by adding the WADR. 1995 Mont. Laws 2715-21. The statute setting forth the WADR provided:
The agency liquor store's purchase price is the department's posted price less the agency liquor store's commission rate in the state agency franchise agreement and less the agency liquor store's weighted average discount ratio. For purposes of this subsection (2)(b)(ii)(B), for agency liquor stores or employee-operated state liquor stores that were operating June 30, 1994, the weighted average discount ratio is the ratio between an agency liquor store's or the employee-operated state liquor store's full case discount sales divided by the agency liquor store's or employee-operated state liquor store's gross sales, based on fiscal year 1994 reported sales, times the state discount rate for case lot sales, as provided in 16-2-201, divided by the state discount rate for full case lot sales in effect on June 30, 1994.
Section 16-2-101(2)(b)(ii)(B), MCA (1995). Following passage of House Bill 574, the Case Discount provided, in relevant part:
Reduction for quantity sales of liquor. (1) Reduction of 8% of the posted price of liquor sold at the agency liquor store must be made by the department for sales to any licensee purchasing liquor in unbroken case lots.
***349 Section 16-2-201(1), MCA (1995).
¶ 8 Mick Robinson, Director of DOR, prepared an exhibit attached to House Bill 574's Fiscal Note. It described a change House Bill 574 made to Agency Liquor Store's commission rates. After privatization, a store's commission rate would be based on "the posted retail price of liquor" instead of "the price after full case discounts are applied." House Business and Labor Committee Hearing, Exhibit 1 (March 2, 1995). The exhibit included an example:
The price of liquor purchased from the state warehouse will be reduced by the commission rate ... which is the difference between the agent's purchase price and the posted price. For example, an agent with a 10% commission will purchase a 12-bottle case of liquor that sells at a state posted retail price of $10 per bottle for $108 from the state warehouse; the sale of each bottle of liquor will produce a $1 commission.
House Business and Labor Committee Hearing, Exhibit 1 (March 2, 1995). Further, the exhibit stated, "if the agent makes full case sales to licensees in the same proportion that occurred in [fiscal year 1994], the cost of discounts will be a wash." House Business and Labor Committee Hearing, Exhibit 1 (March 2, 1995).
*1109 ¶ 9 After 1995, the Legislature revisited the WADR and the Case Discount. See 1997 Mont. Laws 168; 2001 Mont. Laws 2493-94; 2007 Mont. Laws 125-26; 2013 Mont. Laws 17; 2015 Mont. Laws 1581-85. The Legislature modified the Case Discount in 2013, removing any reference to DOR:
Reduction for quantity sales of liquor.(1) Reduction A reduction of 8% of the posted price of liquor sold at the an agency liquor store must be made by the departmentfor sales of liquor to any a licensee purchasing liquor in unbroken case lots.
2013 Mont. Laws 17 (added text underlined and deleted text stricken). Further, prior to its repeal in 2016, legislators in 2007 attempted to remove the WADR and amend the Case Discount by adding a sentence directly requiring DOR to reimburse Agency Liquor Stores based on their actual Case Discounts. The proposed bill died in standing committee. HB 173, 60th Leg. (Mont. 2007).
Procedural Posture
¶ 10 In February 2014, Storeowners filed a complaint seeking declaratory, injunctive, and class-wide relief "on behalf of Montana liquor store franchisees who have been programmatically undercompensated by the State for the sale of case-lots of liquor to state liquor licensees." In their complaint, Storeowners described how DOR "reimbursed [them] for ... mandated discounts based not on the ***350 actual discounts given, but upon a ratio of case-lot sales to licensees[2] to overall sales made by each store in fiscal year 1994" resulting "in a significant cumulative loss to certain agency liquor store franchisees." The parties jointly moved for class certification. In its certification order, the District Court defined the class as: "Owners of Montana liquor stores which have provided statutorily required discounts on the sale of unbroken case lots of liquor in a greater amount than the State has reimbursed or returned to those store owners." (Emphasis omitted.)
¶ 11 In October 2014, Storeowners moved for partial summary judgment on their constitutional claims. In January 2015, DOR moved to amend its answer to add the defense of statute of limitations. The District Court heard oral argument on the issues and ordered supplemental briefing. In its April 2015 order on summary judgment, the District Court first concluded the purpose of the WADR was to fully reimburse Agency Liquor Stores for the cost of providing the Case Discount to Licensees. The District Court stated, "From 1995 to 2013, the statutory scheme remained unchanged and the legislative history evidences a clear intent by the State to reimburse liquor store owners for the statutorily-required case lot discount." The District Court granted Storeowners' motion in part, concluding that the WADR was "once reasonable," but "[i]ts contemporary application violates the class members' equal protection and substantive due process rights under Article II, sections 4 and 17 of the Montana Constitution." The District Court denied Storeowners' motion in part, finding the "statute is not an unconstitutional taking of private property under Article II, section 29 of the Montana Constitution." Also in its order on summary judgment, the District Court concluded Storeowners' claims were not barred by laches and denied DOR's motion to amend its answer to add the defense of statute of limitations.
¶ 12 The proceeding then entered its damages phase.[3] The District Court concluded that the WADR's reliance on 1994 sales data was unconstitutional beginning on July 1, 1998, when it could have been reviewed like the commission rate discount. The District Court ***351 awarded damages of $14,836,178.22. The District Court subsequently concluded DOR was unjustly enriched and added $8,718,803.88 in attorney fees and $11,320,233.43 in interest to the $14,836,178.22 judgment.
¶ 13 Both parties appeal. This Court heard oral argument on February 7, 2018.
*1110 STANDARD OF REVIEW
¶ 14 "This Court exercises plenary review of constitutional issues." Mont. Cannabis Indus. Ass'n v. State , 2016 MT 44, ¶ 12, 382 Mont. 256, 368 P.3d 1131, cert. denied , --- U.S. ----, 136 S. Ct. 2523, 195 L.Ed.2d 844 (2016). A statute is presumptively constitutional and the party challenging it bears the burden of proving it is unconstitutional beyond a reasonable doubt. Mont. Cannabis Indus. Ass'n , ¶ 12 ; Williams v. Bd. of Cnty. Comm'r , 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88. "The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action." Powder River Cnty. v. State , 2002 MT 259, ¶ 73, 312 Mont. 198, 60 P.3d 357.
DISCUSSION
¶ 15 The gravamen of Storeowners' complaint is that liquor sales have changed since 1994; some stores sell more unbroken cases of liquor than they did in 1994 and, conversely, some stores sell less. Storeowners allege they earned less, or made less profit, because the WADR did not respond commensurate to their increased unbroken case sales after 1994. Storeowners assert that DOR, through its application of the WADR, was required to fully reimburse them for the cost of providing the Case Discount to Licensees. They contend the WADR violated their rights to substantive due process and equal protection and urge this Court to affirm the District Court's declaration that it was unconstitutional. We address these constitutional claims and find the WADR's constitutionality is dispositive of the parties' remaining arguments on appeal.
¶ 16 1. Whether the District Court erred in determining the WADR violated Storeowners' rights to substantive due process.
¶ 17 "No person shall be deprived of life, liberty, or property without due process of law." Mont. Const. art. II, § 17 ; accord . U.S. Const. amends. V, XIV, § 1. "Substantive due process analysis requires a test of the reasonableness of a statute in relation to the State's power to enact legislation." Newville v. Dep't of Family Servs ., 267 Mont. 237, 250, 883 P.2d 793, 801 (1994) (quoting ***352 Raisler v. Burlington N. R.R. Co ., 219 Mont. 254, 263, 717 P.2d 535, 541 (1985) ). To conduct a substantive due process analysis where no fundamental right is implicated, we examine "(1) whether the legislation in question is related to a legitimate governmental concern, and (2) whether the means chosen by the Legislature to accomplish its objective are reasonably related to the result sought to be attained." Mont. Cannabis Indus. Ass'n , ¶ 21. This inquiry, described as rational basis review, is the most deferential standard of review. Mont. Cannabis Indus. Ass'n , ¶ 26.
¶ 18 The first component of our due process analysis is uncontested. The legislative policy supporting the Montana Alcoholic Beverage Code is to ensure "complete regulatory control of the sale of liquor ... for the protection, health, welfare, and safety of the people of the state." Section 16-1-103, MCA. DOR and Storeowners agree that the legislation in question, the WADR, is related to a legitimate governmental concern.
¶ 19 We turn to the second component, whether the means chosen to accomplish the WADR's objective are rationally related to the result sought. See Mont. Cannabis Indus. Ass'n , ¶ 21. The parties disagree on what result the Legislature sought when it enacted the WADR and also on whether that result was rationally related to the WADR. DOR first argues the District Court misconstrued the legislative history of House Bill 574 to conclude the WADR's purpose was to fully reimburse Agency Liquor Stores for the cost of providing the Case Discount to Licensees. DOR contends that the WADR's purpose was to offset some or all of the cost of providing the Case Discount. Second, DOR argues the District Court inappropriately applied a changed-circumstances test in order to conclude that the WADR, despite being rational when it was enacted, became arbitrary and irrational. DOR argues the District Court's analysis should have ended when it determined the WADR was constitutional when enacted. Storeowners respond by arguing the District Court correctly concluded the WADR's purpose was to fully reimburse Agency Liquor Stores for providing Case Discounts and appropriately applied a changed-circumstances test. Our resolution *1111 of the parties' arguments on appeal requires us to determine the WADR's purpose and then test its rational relationship to that purpose.
¶ 20 We first consider the WADR's purpose. Initially, there is nothing in the plain language of the WADR that expresses the Legislature's intention for it to fully reimburse liquor stores for the cost of providing the Case Discount. See § 1-2-101, MCA (describing "the office of the judge is simply to ascertain and declare what is in terms or in ***353 substance contained therein, not to insert what has been omitted or to omit what has been inserted"). We agree with DOR's description of the WADR as "a complicated formula that considered sales and ratios." Moreover, if it was the Legislature's intention in enacting the WADR to fully reimburse Agency Liquor Stores for the cost of providing the Case Discount, it could have done so by using a simple directive clearly indicating DOR was to fully reimburse Agency Liquor Stores for the cost of providing the Case Discount. The failed attempt to add such a simple directive in 2007 demonstrates that the Legislature rejected full reimbursement in favor of a partial offset. The Legislature made numerous changes to the WADR over the years and declined the opportunity to eliminate it or to directly provide for full reimbursement. Reading the WADR and the Case Discount together, there is nothing in the statutory language that indicates the Legislature intended the WADR to fully reimburse Agency Liquor Stores for the cost of providing the Case Discount to Licensees.
¶ 21 The WADR's legislative history and placement within the statutory scheme also does not suggest the Legislature intended full reimbursement. The purpose of legislation "does not have to appear on the face of the legislation or in the legislative history, but may be any possible purpose of which the court can conceive." Satterlee v. Lumberman's Mut. Cas. Co ., 2009 MT 368, ¶ 34, 353 Mont. 265, 222 P.3d 566 (quoting Stratemeyer v. Lincoln Cnty. , 259 Mont. 147, 152, 855 P.2d 506, 509-10 (1993) ). A conceivable purpose of the WADR was, as DOR suggests, to offset some or all of the cost Agency Liquor Stores incur by providing the Case Discount to Licensees. The "constitutional role of this Court [is] to presume the statute [is] constitutional and look to any possible legitimate purpose." Satterlee , ¶ 34. We observe that House Bill 574's revisions to the Montana Alcoholic Beverage Code were a compromise between all of the major groups affected by privatization, including "employees, agents, liquor licensees, liquor suppliers, and the Department of Revenue." Senate Business and Industry Committee Hearing Minutes, 1 (March 21, 1995). A proponent described it as a compromise bill drafted after a "saga of liquor privatization." House Business and Labor Committee Hearing Minutes, 3 (March 2, 1995). "As with all legislative compromises," House Bill 574's changes are "not infallible and the legislative decisions made in adopting [it] are subject to honest debate." See Satterlee , ¶ 37.
¶ 22 It is also clear that when the Legislature considered House Bill 574, it was aware that the WADR would not always fully reimburse Agency Liquor Stores for the cost of providing the Case Discount. Opposing the bill, Bea Lunda, from Agency 29 in Shelby, suggested ***354 amending the bill to specifically address this concern. She recognized that, "[a]s written, an Agent could end up selling a large amount of his inventory at 2% commission" or the difference between a store's standard 10% commission rate and the 8% Case Discount. House Business and Labor Committee Hearing, Exhibit 6, 1 (March 2, 1995). Understanding that if unbroken case sales increased the WADR would not fully reimburse stores for the cost of providing Case Discounts, Bea Lunda suggested the WADR "must be set up so that the savings passed on to the licensees [are] not at the Agent's expense." House Business and Labor Committee Hearing, Exhibit 6, 1 (March 2, 1995). Supporting the bill, Mick Robinson recognized that if a store continues to sell the "same" amount of unbroken cases as it did in 1994, the cost of discounts would be "a wash." House Business and Labor Committee Hearing, Exhibit 1 (March 2, 1995). Mick Robinson was not suggesting sales would stay the same, but explained that if they did, the WADR's effect would completely offset the cost of providing the Case Discount. These examples from House Bill 574's legislative history demonstrate that when the Legislature considered and passed House *1112 Bill 574, it was aware the WADR would not always fully reimburse Agency Liquor Stores for the cost of providing the Case Discount.
¶ 23 Finally, the numerous revisions to the statutory scheme in order to privatize liquor stores demonstrate the Legislature's intention to move away from its historic practice of providing full reimbursement. Prior to privatization in 1995, DOR fully reimbursed State liquor stores for providing the Case Discount to any person purchasing unbroken cases. Section 4-2-201, RCM (1975). However, in order to privatize, the Legislature substantially revised the Case Discount and added the WADR. The Legislature changed the Case Discount by limiting its beneficiaries from "any person" to Licensees and increased the discount from 5% to 8%. The Legislature also added the WADR, defining it as "the ratio between an agency liquor store's ... full case discount sales divided by the agency liquor store's ... gross sales, based on fiscal year 1994 reported sales, times the state discount rate for case lot sales, as provided in 16-2-201, divided by the state discount rate for full case lot sales in effect on June 30, 1994." Section 16-2-101(2)(b)(ii)(B), MCA (1995) (emphasis added). Therefore, the WADR incorporated the changes made to the Case Discount, and it is clear from the language of the statutes that the two discounts are interconnected. The WADR relies on a store's "full case discount sales ... based on fiscal year 1994 reported sales" when the Case Discount was lower, 5% instead of 8%, and more broadly available to any person buying unbroken cases instead of just to Licensees. The statutory ***355 scheme indicates the Legislature intended to alter the way DOR historically fully reimbursed State liquor stores, in favor of using the WADR to offset some or all of the cost an Agency Liquor Store incurred by providing the Case Discount in order to privatize liquor stores in Montana.
¶ 24 This Court recognizes that how best to achieve an objective is a debate "much better suited to the halls of the legislature." Satterlee , ¶ 38. Further, once the legislative branch approves a statute, "this Court's role is not one of second guessing the prudence of the conclusions reached." Satterlee , ¶ 37. These principles require us to conclude that the purpose of the WADR was to promote privatization of liquor stores by offsetting some or all of the cost of providing the Case Discount. Our conclusion is supported by the absence of any statutory language suggesting Agency Liquor Stores were to be fully reimbursed and by the WADR's legislative history. The purpose of the WADR was not to fully reimburse Agency Liquor Stores, but to offset some or all of the cost of providing the Case Discount.[4]
¶ 25 We next consider whether the WADR was rationally related to its purpose. "A statute that is unreasonable, arbitrary, or capricious and bears no reasonable relationship to a permissible government interest offends due process. In contrast, a statute that is neither unreasonable nor arbitrary when balanced against the purpose of the legislature in enacting the statute does not offend due process." Mont. Cannabis Indus. Ass'n , ¶ 30 (quotations and citations omitted). In declaring the WADR unconstitutional, the District Court relied on United States v. Carolene Products Co ., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), to focus its rational basis review on "what the government is actually doing to its citizens in enforcing a law, not what the legislature did long ago."
¶ 26 In Carolene Products , the United States Supreme Court described "a rational basis" inquiry for the first time and held that Congress's ban on "filled milk," an imitation milk product made of condensed milk ***356 and oil, was an appropriate exercise of its power to regulate interstate commerce. 304 U.S. at 145-46, 153-54, 58 S.Ct. at 780, 784-85. The *1113 District Court described Carolene Products 's holding, stating, "a plaintiff can overcome a presumption of constitutionality by proving a law's factual premises are no longer true, and by enforcing the law, the government acts unreasonably and irrationally." The District Court noted that the Carolene Products Court reached its decision by evaluating "the rationality of enforcing the law now, not the rationality of its enactment." (Emphasis omitted.) The District Court went on to describe how the United States Supreme Court, while never overruling Carolene Products , more recently focuses its review "on the legitimacy of the law when it was passed, not when enforced." See , e.g. , FCC v. Beach Commc'ns , 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993) (recognizing that "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data"); Minn. v. Clover Leaf Creamery Co. , 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981) (holding that "[w]here there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken"). The District Court also noted that this Court "has never applied Carolene Products or the changed circumstances doctrine in constitutional review." Nonetheless, it concluded the WADR outlived the conditions it was meant to address and imposed burdens the Legislature "never intended."
¶ 27 The District Court was correct that this Court has not adopted Carolene Products 's changed-circumstances test. What is clear from a review of our rational basis precedent is that we consider whether a statute is reasonably related to a permissible legislative objective at the time the legislation is enacted. See Brewer v. Ski-Lift , 234 Mont. 109, 115, 762 P.2d 226, 230 (1988), superseded by statute on other grounds as stated in Kopeikin v. Moonlight Basin Mgmt. LLC , 981 F.Supp.2d 936, 941 (Mont. 2013). In Montana Cannabis Industry Association , ¶ 25, we clarified that Brewer "says nothing about consideration of post-enactment evidence to [p]rove a statute's basis irrational." Brewer 's analysis was limited to considering the absence of a rational basis in the legislation as adopted. This Court has also held that when analyzing a statute's constitutionality, it is not our role to "second guess the prudence of a legislative decision." Mont. Cannabis Indus. Ass'n , ¶ 26 (quoting Satterlee , ¶ 34 ).
¶ 28 Our jurisprudence centers on the legislative purpose at the time ***357 of passage. See , e.g. , Goble v. Mont. State Fund , 2014 MT 99, ¶ 36, 374 Mont. 453, 325 P.3d 1211 (reviewing the public policy considerations underlying the challenged statute); McDermott v. Dep't of Corr. , 2001 MT 134, ¶¶ 40-41, 305 Mont. 462, 29 P.3d 992 (reviewing the challenged statute's legislative history); Powell v. State Comp. Ins. Fund , 2000 MT 321, ¶ 28, 302 Mont. 518, 15 P.3d 877 (describing the focus as the "purpose of the legislature in enacting the statute").
¶ 29 The District Court tested the WADR's rational relationship to the purpose of full reimbursement and found its contemporary application "irrational because it fail[ed] to accomplish the objective of reimbursing" Storeowners for the Case Discount. In order to do so, the District Court looked to its application and effect over time. However, the purpose of the WADR was not full reimbursement, but to offset some or all of the cost of providing the Case Discount. When the WADR is balanced against the purpose of offsetting some or all of the cost of the Case Discount, an objective it consistently achieved, it was neither arbitrary nor unreasonable from its enactment in 1995 until its repeal in 2016. The WADR, and its placement within the surrounding statutory framework, was rationally related to offsetting some or all of the cost of providing the Case Discount and was one tool the Legislature used to privatize liquor stores in Montana. We conclude the WADR was reasonably related to the purpose of offsetting some or all of the cost Agency Liquor Stores incurred by providing the Case Discount to Licensees. The District Court erred in determining that the WADR violated Storeowners' rights to substantive due process.
¶ 30 2. Whether the District Court erred in determining the WADR violated Storeowners' rights to equal protection.
¶ 31 "No person shall be denied the equal protection of the laws."
*1114 Mont. Const. art. II, § 4 ; accord . U.S. Const. amend. XIV, § 1. The purpose of equal protection is to "ensure that Montana's citizens are not subject to arbitrary and discriminatory state action." Powell , ¶ 16.
¶ 32 In the District Court and on appeal, Storeowners rely on Montana Department of Revenue v. Barron , 245 Mont. 100, 799 P.2d 533 (1990), and Montana Department of Revenue v. Sheehy , 262 Mont. 104, 862 P.2d 1181 (1993), to support their contention that the WADR violates their rights to equal protection. Barron and Sheehy both examined the effect of a statute DOR implemented to appraise, assess, and equalize the valuation of property called the "stratified sales assessment ratio study." Barron , 245 Mont. at 101-02, 799 P.2d at 533-34 ; Sheehy , 262 Mont. at 105, 862 P.2d at 1182. Homeowner Barron challenged the constitutionality of the statute after DOR adjusted her home's value ***358 upward by 30%. Barron , 245 Mont. at 103-04, 799 P.2d at 535. This Court found the adjustment did not achieve the intended purpose of equalizing appraisal values and actual values; instead, the statute exacerbated any preexisting inequality and created inequality in home values appraised at or near their actual value. Barron , 245 Mont. at 108, 799 P.2d at 538 (citing "[e]xamples of unfairness" including one home that was over appraised prior to the adjustment and over appraised by 255% after, a second home that was appraised at or near its actual value prior to the adjustment and over appraised by 132% after, and a third home that was under appraised prior to the adjustment and still under appraised by 65% after). In Barron , without conducting a traditional equal protection analysis, this Court held that the stratified sales assessment ratio violated equal protection because the statute required some taxpayers to "bear a disproportionate share of Montana's tax burden." Barron , 245 Mont. at 111, 799 P.2d at 540. In Sheehy , this Court relied on Barron to conclude that a similar modified stratified sales assessment ratio study DOR used to adjust home values also violated equal protection, again without conducting an equal protection analysis. Sheehy , 262 Mont. at 107, 862 P.2d at 1183.
¶ 33 We conclude Barron and Sheehy are inapplicable to the circumstances here. Storeowners do not argue the difference between the WADR and the Case Discount can be likened to a tax. The crux of Storeowners' argument is that they make less profit because their unbroken case sales have increased since 1994 and, correspondingly, they provide more Case Discounts. However, Storeowners may sell liquor from broken cases for any price and without providing the Case Discount. Accordingly, the tax at issue in Barron and Sheehy is distinguishable from Storeowners' claim of reduced profits. The relationship between the WADR and the Case Discount did not require certain taxpayers to "bear a disproportionate share of Montana's tax burden." See Barron , 245 Mont. at 114-15, 799 P.2d at 542 ; Sheehy , 262 Mont. at 106, 862 P.2d at 1183.
¶ 34 The Court follows three steps to analyze an equal protection claim: (1) identify the classes involved and determine if they are similarly situated; (2) determine the appropriate level of scrutiny to apply to the challenged legislation; and (3) apply the appropriate level of scrutiny to the challenged legislation. Goble , ¶ 28. The first step requires "a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." Powell , ¶ 22. "If the classes at issue are not similarly situated, then the first criteria ***359 for proving an equal protection violation is not met and we need look no further." Powell , ¶ 22.
¶ 35 Storeowners argue the WADR's reliance on 1994 sales data created two classes-an undercompensated class and an overcompensated class. The undercompensated class included Agency Liquor Stores, like Storeowners, that sold more unbroken cases at the Case Discount rate after 1994. For the undercompensated class, the WADR's reliance on 1994 sales data had the effect of less-than-fully reimbursing those stores for the Case Discounts they provided to Licensees. The overcompensated class included Agency Liquor Stores that sold fewer unbroken cases at the Case Discount rate after 1994. For the overcompensated class, the WADR's reliance on 1994 sales data had the effect of fully or over reimbursing stores for the Case Discounts they provided to Licensees. DOR argues the WADR applied to all Agency Liquor Stores equally and that whether a *1115 particular store fell into the overcompensated class or undercompensated class depended on the stores' unrelated, independent business decisions.
¶ 36 For purposes of adjudicating a class action lawsuit under M. R. Civ. P. 23, the District Court certified Storeowners as a class of "Owners of Montana liquor stores which have provided statutorily required discounts on the sale of unbroken case lots of liquor in a greater amount than the State has reimbursed or returned to those store owners." (Emphasis omitted.) In identifying the classes to examine Storeowners' equal protection claim, the District Court relied on its certification of Storeowners as a class for class action purposes. The District Court recognized the second class as "liquor stores who receive reimbursements for discounts that were not provided, to wit , they sold more case lots in 1994 than today and continue to receive the 1994 windfall." Further, the District Court found the "discriminatory factor is the 1994 sales data" and that the classes were similarly situated because the WADR's "reimbursements are based on the same formula."
¶ 37 "The goal of identifying a similarly situated class is to isolate the factor allegedly subject to impermissible discrimination." Goble , ¶ 29. Further, "two groups are similarly situated if they are equivalent in all relevant respects other than the factor constituting the alleged discrimination." Goble , ¶ 29. Here, the factor constituting the alleged discrimination is the WADR's use of 1994 sales data. However, the classes are not equivalent in all relevant respects because the effect of the WADR's use of 1994 sales data-resulting in full compensation, over compensation, or under compensation-varied depending on the Agency Liquor Store's unbroken case sales after 1994. We agree with ***360 DOR that whether a store's unbroken case sales grew, stayed the same, or diminished after 1994, is attributable to that Agency Liquor Store's independent business decisions. Those independent business decisions created fundamental differences that sufficiently distinguish the classes and render them dissimilar for equal protection purposes. Storeowners fail to make the threshold showing that they are part of two or more similarly situated classes and therefore fail to prove an equal protection violation. See Powell , ¶ 22. The District Court erred in its determination that the WADR violated Storeowners' rights to equal protection.
¶ 38 Our conclusion that the WADR was constitutional is dispositive of Storeowners' remaining claims of unlawful taking and unjust enrichment. It is unnecessary to address the parties' remaining arguments on appeal.
CONCLUSION
¶ 39 The WADR, set forth in § 16-2-101(2)(b)(ii)(B), MCA (repealed 2016), was rationally related to the legislative purpose of offsetting some or all of the cost Agency Liquor Stores incurred by providing the Case Discount to Licensees. Neither the WADR's language nor its legislative history support Storeowners' contention that the Legislature intended the WADR to fully reimburse Agency Liquor Stores for the cost of providing the Case Discount. Further, whether a store's unbroken case sales grew, stayed the same, or diminished, is sufficiently attributable to that Agency Liquor Store's independent business decisions and renders the classes dissimilar for equal protection purposes. The WADR did not violate Storeowners' rights to substantive due process or equal protection. It was a constitutional part of a statutory scheme designed to privatize liquor stores in Montana.
¶ 40 The judgment of the District Court is reversed.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

In 2015, the Legislature amended § 16-2-101, MCA, effective February 1, 2016, by removing the three discounts and enacting a graduated commission rate schedule based on a store's sales from the previous year. 2015 Mont. Laws 1581-85. This appeal concerns only the repealed WADR.

Although in their initial complaint Storeowners refer to the Case Discount as a discount given only "to licensees," we note that, in 1994, the Case Discount was available to "any person" buying unbroken cases. See supra ¶¶ 6-7.

At the parties' request, the District Court bifurcated the case into two parts, the first phase addressed Storeowners' constitutional claims and the second phase addressed damages.

After 1995, an Agency Liquor Store Specialist for DOR's Liquor Control Division, drafted a brochure entitled, "The Agency Liquor Store." The brochure described the purpose of the WADR as "offsetting some or all of the cost that agents incur for providing an 8% discount on the posted price of liquor to any liquor licensee purchasing liquor in unbroken case lots." (Emphasis added.) Further it described how DOR provided the WADR to Agency Liquor Stores on all of its purchases from the Liquor Warehouse regardless of whether it ultimately sold the liquor to Licensees in unbroken cases and accordingly provided the Case Discount: "For example, an agent with a 10% commission and a 1.67% weighted average discount percentage pays $106 for a 12-bottle case of liquor that sells at a state posted price of $10 per bottle."